Larry **BROCK, et al., Plaintiffs,**

v.

**BASKIN–ROBBINS USA CO., and Baskin–Robbins Incorporated, Defendants.**

No. 5:99–CV–274.

United States District Court, E.D. Texas, Texarkana Division.

Sept. 18, 2000.

E. Ben Franks, Texarkana, TX, for Plaintiffs.

George L. McWilliams, Pattom Haltom, Texarkana, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Defendants in this case are Baskin–Robbins Co. and Baskin–Robbins, Inc., which sell ice cream through franchises. Plaintiffs· are owners of approximately forty-seven franchises located in New Mexico, Texas, Louisiana, Mississippi, and Alabama and the shareholders of corporate franchisees. In their Second Amended Complaint, the Plaintiffs allege that the defendants made various material misrepresentations and omissions about the purchase and operation of their franchises, tortiously interfered with contracts to sell certain franchises, and misapplied funds from an advertising trust fund set up for the Plaintiffs' benefit. Plaintiffs seek equitable relief, compensatory damages, and punitive damages of $40,000,000.

Before the Court is "Defendants' Motion to Dismiss with Respect to Certain Plaintiffs and Motion to Transfer Venue with Respect to the Remaining Plaintiffs." (Dkt. No. 12.) Defendants' motion is in four parts. First, Defendants move under FED. R. CIV. P. 12(b)(3) to dismiss the Plaintiffs whose franchise agreements contain a forum-selection clause requiring the parties to resolve their disputes in the judicial district where Baskin–Robbins has its principal office. Defendants contend that this clause requires these Plaintiffs to bring their claims in the Middle District of California, and therefore, venue is not proper in the Eastern District of Texas. Second, Defendants move to transfer the remaining Plaintiffs to the Middle District of California under 28 U.S.C. § 1404(a) arguing that the other Plaintiffs will likely refile their cases in that district ·and judicial economy is best served by keeping these cases together. Third, Defendants

move to dismiss the claims of shareholders in corporate franchisees arguing that the Plaintiffs have failed to state a cause of action on behalf these parties as individuals and that they lack standing to sue for alleged wrongs committed by the Defendants against corporate franchisees. Finally, Defendants move to dismiss Plaintiff David Sturgeon on the ground that the Complaint does not identify David Sturgeon's relation to the case, and Defendants were unable to determine from their own records who David Sturgeon is.

## I. BACKGROUND

In their Second Amended Complaint, the Plaintiffs assert thirteen state-law causes of action against the Defendants. These include fraud, fraud in the inducement, claims under various state consumer protection laws, intentional interference with contractual relations, breach of implied covenants of good faith and fair dealing, breach of fiduciary duty, and conversion. Plaintiffs also seek an injunction against enforcement of noncompete agreements within their franchise agreements and rescission of their franchise agreements.

Plaintiffs' claims stem from four alleged courses of conduct by the Defendants. The first course of conduct forming the basis of the complaint occurred in 1999. In October of that year, a Baskin–Robbins representative, Connie Burkhart, gave the Plaintiffs written notice that Baskin–Robbins would not renew their franchise agreements. The reason she gave was that these franchises are located in what Baskin–Robbins referred to as "non-strategic markets." Plaintiffs allege that Defendants knew for at least several months prior to October that they would not renew the agreements but withheld this information from the Plaintiffs. They further allege that Baskin–Robbins required its representatives, including Connie Burkhart, to execute confidentiality agreements preventing them from disclosing, prior to Oc-

tober, Baskin–Robbins' plans not to renew these franchises or its determination that these franchises were located in nonstrategic markets. Plaintiffs state that during these months between Defendants' decision not to renew these franchises and Connie Burkhart informing Plaintiffs of this decision, Defendants continued to sell ice cream to the Plaintiffs. While it appears at first glance that Defendants were merely continuing to perform under the existing franchise agreements, Plaintiffs characterize this practice as "unconscionable." (Pls.' 2d Am. Compl. at 15.) Based on these actions by the Defendants, Plaintiffs assert causes of action for breach of implied covenant of good faith and fair dealing and violation of various state consumer protection laws.

The second alleged course of conduct involves the purchase and renewal of Plaintiffs' franchises between 1994 and 1997. During this time period, Baskin–Robbins offered three different types of franchises: "basic retail units," also called "single-brand" franchises, which are Baskin–Robbins ice cream stores located in a mall or strip shopping center; "drive-thru retail units," which are stand-alone stores with drive-through windows; and "combobrand" stores, which offer other products, such as donuts or sandwiches, in addition to ice cream.

Plaintiffs allege that at some point between January 1, 1994 and May 8, 1997, the Defendants, together with representatives of Dunkin Donuts, Inc., concluded that the combo store was a more profitable business model and that single-brand stores were obsolete. (Pls.' 2d Am. Compl. at 17). Plaintiffs further allege that, based upon its conclusion that the single-brand stores were obsolete, Defendants decided to rapidly expand the number of combo stores and phase out single-brand stores between 1997 and 2000.

Plaintiffs are franchisees who purchased or renewed single-brand franchises between January 1, 1994 and May 8, 1997. Plaintiffs complain that Baskin–Robbins sold them these franchises even though Baskin–Robbins planned to phase out this type of store within the next few years and that Baskin–Robbins never disclosed these plans to the Plaintiffs. Based upon this alleged course of conduct, Plaintiffs assert claims for fraud and fraudulent inducement claiming that they would never have invested in these franchises had the Defendants disclosed their attitude toward the single-brand franchises or their intention to phase them out.

The third course of conduct of which the Plaintiffs complain involves attempts by some of the franchisees to sell their franchises. The Second Amended Complaint states that during negotiations to sell a number of the franchises, the Defendants contacted the potential buyers and informed them that these particular franchises were located in nonstrategic markets. These potential buyers later refused to go ahead with their purchases. Based upon this alleged conduct, these franchisees assert claims of tortious interference with contract.

The last course of conduct about which the Plaintiffs complain relates to the Baskin–Robbins System and Product Advertising Trust Fund ("trust fund"). Baskin–Robbins set up this trust fund in 1985 to provide national marketing and advertising support for its franchisees. The franchisees finance this fund through mandatory contributions based upon a percentage of sales. Baskin–Robbins, Inc. acts as trustee.

On January 1, 1997, the trust fund began to account for the funds used for regional advertising as well. Baskin–Robbins, Inc. previously held these funds, which the franchisees also contribute under their franchise agreements based on a percentage of sales. Plaintiffs allege that after January 1, 1997, Baskin–Robbins changed the scope of media coverage to include only regional advertising. They further allege that Baskin–Robbins divided franchises into three tiers based upon the

size of the media market in which a franchise was located—Tier I being located in the larger markets and Tiers II and III being located in smaller markets. All of the Plaintiffs are located in Tier II and III markets. Plaintiffs allege that Baskin–Robbins then channeled the bulk of the trust's funds into Tier I markets. Plaintiffs contend that the termination of national advertising and the concentration of advertising in the larger media markets had a detrimental impact to their sales growth. While franchises in the Tier I markets showed sales increases on average of 5.1% from September to August 1997, Plaintiffs' sales increased only 2.6% in Tier II markets and 2.0% in Tier III markets. (Pls.' 2d Am. Compl., Ex. 10). Plaintiffs claim that the discontinuation of national advertising and the focus on regional advertising in the Tier I markets violated their franchise agreements. They also bring claims for breach of fiduciary duty and conversion of their trust fund contributions.

## II. THE PROPER STANDARD TO ANALYZE THE FORUM-SELECTION CLAUSE

Each of these forty-seven franchises operates under a franchise agreement. Thirty-seven of these agreements contain a forum selection clause, which reads as follows:

Any dispute arising under or in connection with the Agreement and any claim affecting its validity, construction, effect, performance or termination (collectively, "Claim") shall be resolved exclusively by the federal or state courts in the judicial district in which Baskin–Robbins has its principal place of business, to the jurisdiction of which the parties hereby irrevocably submit; provided that if Baskin–Robbins is a party to such a Claim, the matter shall be resolved exclusively by, as the case may be, (a) the United States District Court, Central District of California or (b) the North Central District, Glendale, of the Los Angeles County Superior Court . . ., which courts are

within the judicial district in which Baskin–Robbins has its principal place of business. Both Franchisees and Baskin–Robbins hereby waive any rights each may have to request a jury trial. Notwithstanding the above, Baskin–Robbins has the right to seek injunctive relief in the county or jurisdiction in which the Retail Unit is located.

The Defendants have moved to dismiss the claims of the Plaintiffs who own franchises governed by agreements containing this forum-selection cause. Defendants also move to transfer the remaining Plaintiffs to the Central District of California based on 28 U.S.C. § 1404.

■ When a federal court sitting in diversity must decide whether to enforce a forum-selection clause under which the parties have agreed to resolve their dispute in another federal court, 28 U.S.C. § 1404(a) governs the court's decision. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In their motion to dismiss based upon the forum-selection clause, Defendants argue that the proper standard to decide its motion is the standard articulated by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). For the following reasons, the Court concludes that the Defendants' assertion is incorrect and that the Court must decide this issue under the standards set forth in 28 U.S.C. § 1404(a).

The standard articulated in *Bremen* is federal common law developed under admiralty jurisdiction and is not "freely transferable to a diversity setting." *Stewart*, 487 U.S. at 27, 108 S.Ct. at 2242 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42, 101 S.Ct. 2061, 2067–68, 68 L.Ed.2d 500 (1981)). In *Bremen*, a German company contracted with an American company to tow a drilling rig platform from Louisiana to Italy. During the voyage, a storm in the Gulf of Mexico seriously damaged the platform. Despite a forum-selection clause in the parties'

contract agreeing to litigate any dispute in English courts, the plaintiff sued in the United Stated District Court in Tampa, Florida. The defendant moved to dismiss based on the forum-selection clause. The district court denied the motion citing the traditional view that forum-selection clauses are not enforceable. *See Bremen*, 407 U.S. at 6, 92 S.Ct. 1907. The Eleventh Circuit affirmed the district court's decision, and the defendant appealed to the Supreme Court.

Because *Bremen* was an admiralty case, the Supreme Court could decide the forum-selection clause issue by applying federal common law. Moreover, because the contractually designated forum was England, 28 U.S.C. § 1404(a) did not apply. Consequently, the Supreme Court could resolve the issue based solely upon federal common law, without restrictions imposed by federal statutes or state laws.[1]

In formulating the common law rule, the Supreme Court first acknowledged the traditional view that forum-selection clauses are unenforceable, but noted that "in an era of expanding world trade and commerce, the absolute aspects of the [traditional view] have little place and would be a heavy hand indeed on the future development of international commercial dealings by Americans." *Bremen*, 407 U.S. at 9, 92 S.Ct. 1907 (citations omitted). The court concluded that when a federal court is sitting in admiralty, "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overwhelming bargaining power ... should be given full effect," and a "forum-selection clause should control absent a strong

showing that it should be set aside." *Id.* at 12–13, 15, 92 S.Ct. 1907.

In *Stewart Org., Inc. v. Ricoh Corp.*, the Supreme Court articulated the proper standard under which district courts are to analyze forum selection clauses when the district court is sitting in diversity jurisdiction. In that case, a dispute arose between a copy machine dealer and a copy machine manufacturer. The dealer sued the manufacturer in the Northern District of Alabama despite a forum-selection clause in the dealership agreement stating that any dispute would be resolved in a federal or state court in New York City. *See Stewart*, 487 U.S. at 24 n. 1, 108 S.Ct. 2239. The manufacturer moved the court to either transfer the case to the Southern District of New York under 28 U.S.C. § 1404(a) or to dismiss the case for improper venue under 28 U.S.C. § 1406.

The district court, reasoning that the issue was controlled by Alabama law, which strongly disfavored forum-selection agreements, denied the motion. The case then went to the Eleventh Circuit on an interlocutory appeal. The Eleventh Circuit first concluded that questions of venue in diversity actions are controlled by federal law, not state law. *See Stewart Org., Inc. v. Ricoh Corp.*, 779 F.2d 643, 647 (11th Cir.1986). The Eleventh Circuit applied the standards articulated in *Bremen* and held that the forum-selection clause was enforceable. *See id.* at 651.

On appeal, the Supreme Court first affirmed the Eleventh Circuit's holding that federal law applied to the enforceability of the forum-selection clause. *See Stewart*, 487 U.S. at 25–27, 108 S.Ct. 2239. The Supreme Court then stated: "Although we

---

1. *Bremen* is thus a specific application of the common-law doctrine of forum non conveniens, which allows a federal court to dismiss an action even though it has proper venue. 28 U.S.C. § 1404 is a codification to the common law doctrine of forum non conveniens that preempts the common law when a party seeks a transfer from one district or division to another based on convenience or fairness. *See* 15 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3828 (1986). Forum non conveniens is still used by the federal courts, however, when the claims are more appropriately brought in a foreign country. *See, e.g., Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir.1993)(dismissing case arising out of an airplane crash that occurred in Germany); *De Melo v. Lederle Lab.*, 801 F.2d 1058 (8th Cir.1986)(dismissing a tort claim more appropriately brought in Brazil).

agree that the *Bremen* case may prove 'instructive' in resolving the dispute, we disagree with the court's articulation of the relevant inquiry as 'whether the forum-selection clause in this case is enforceable under the standards set forth in *Bremen.*'" *Id.* at 29, 108 S.Ct. 2239 (quoting *Stewart*, 810 F.2d at 1069). Instead, 28 U.S.C. § 1404(a)[2] controls whether the district court should give effect to the parties contractual choice of venue and transfer the case. *See id.*

> Section 1404(a) is intended to place discretion in the district court to adjudicated motions to transfer according to "individualized, case-by-case consideration of convenience and fairness." [citations omitted] A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. In its resolution of the § 1404(a) motion in this case, for example, the district court will be called on to address such issues as the convenience of the Manhattan forum given the parties express preference for that venue, and the relative fairness of transfer in light of the forum-selection clause and the parties relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preference.

*Stewart*, 487 U.S. at 29–30, 108 S.Ct. 2239 (citations omitted).

The defendant in *Stewart* had moved for a transfer of venue under both section 1404(a) and 1406. While the Supreme Court concluded that section 1404(a) was the proper standard, it did not directly address the defendant's section 1406 argument that venue was improper. The court

noted, however, that the parties did not dispute that the district court properly denied the motion to dismiss for improper venue under section 1406 because the defendant did business in the Northern District of Alabama. *See Stewart*, 487 U.S. at 22 n. 8, 108 S.Ct. 2239 (citing 28 U.S.C. § 1391(c)); *see also P.M. Enterprises v. Color Works, Inc.*, 946 F.Supp., 435 (S.D.W.Va.1996)("[T]he propriety of venue rests upon whether an action satisfies the federal venue statute, 28 U.S.C. § 1391, not upon the provisions of private contractual agreements."); *Nat'l Micrographics, Inc. v. Canon U.S.A., Inc.*, 825 F.Supp. 671, 678 (D.N.J.1993). If the Supreme Court concluded, as its statement implies, that a forum selection clause does not render defective venue that was otherwise appropriate under section 1391, then *Stewart* logically precludes all motions based on the theory that the original court lacks jurisdiction by virtue of the forum-selection clause. *See* David H. Taylor, *The Forum Selection Clause: A Tale of Two Concepts*, 66 Temple L. Rev. 785, 830 (1993). Therefore, in the context of a federal court sitting in diversity, when a forum selection clause allows the parties to bring the action in another federal court and venue is proper under section 1391 in the district court where the action is presently pending, the district court should apply the standards of section 1404(a) rather than the standard in *Bremen*. *See Stewart*, 487 U.S. at 28–29, 108 S.Ct. 2239.

In support of their argument that *Bremen* applies in diversity cases such as this one, the Defendants cite the Fifth Circuit's opinions in *International Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112 (5th Cir.1996) and *Haynsworth v. Corporation*, 121 F.3d 956 (5th Cir.1997). In *International Software*, the Fifth Circuit held that *Bremen* applies when a forum selection clause in a diversity case states that the case must be brought in state

---

**2.** Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

court. 77 F.3d at 115. In adopting the common-law standard, the Fifth Circuit noted that while the court would "prefer" to apply the same *Stewart* balancing standard in this context, 28 U.S.C. § 1404(a) did not apply since the forum-selection clause did not allow transfer to another federal district court. *Id.* (citing *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990)). But as the Supreme Court made clear in *Stewart*, *Bremen* does not apply when the district court is sitting in diversity, the forum selection clause allows suit in another federal court, and venue is proper under 28 U.S.C. § 1391 in the court in which the plaintiff filed suit. In such cases, 28 U.S.C. § 1404(a) controls.

In *Haynsworth v. Corporation*, the Fifth Circuit held that *Bremen* applied to a contract between Lloyd's of London and a group of Americans who participated as underwriters in Lloyd's insurance market. 121 F.3d at 959–60. The American plaintiffs sued in federal court under diversity jurisdiction alleging that members of Lloyd's concocted a scheme to recruit the Americans into the market to shift to them losses that the members expected to arise· due to pollution and asbestos-related insurance claims. *See id.* at 960. A forum-selection clause in the general agreement between the plaintiffs and Lloyd's required all disputes to be resolved in the courts of England, and Lloyd's moved to dismiss based upon that forum-selection clause. The Fifth Circuit held that the *Bremen* standard applied, stating that, under *Bremen*, "federal courts presumptively must enforce forum-selection clauses in international transactions." *Id.* at 962. The Fifth Circuit further stated that "[p]ublic policy weighs strongly in favor of *Bremen*'s presumption, because of uncertainty as to the forum for disputes and applicable law 'will almost inevitably exist with respect to any contract touching *two or*

*more countries.'*" *Id.* (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 516, 94 S.Ct. 2449, 2455, 41 L.Ed.2d 270 (1974)) (emphasis added). The present case is a purely domestic dispute, and the forum-selection clause allows the case to be brought in another federal district court. *Haynsworth* does not, therefore, support Defendants' argument that the Court should apply the federal common law rule articulated in *Bremen* in this case.

In summary, where jurisdiction is based upon diversity, the forum-selection clause allows suit in another federal court, and venue is proper under 28 U.S.C. § 1391 in the court in which the plaintiff filed suit, the Supreme Court's decision in *Stewart* directs the Court to apply the standard set forth in 28 U.S.C. § 1404(a) taking appropriate consideration of the parties' apparent choice of forum.

### III. APPLICATION OF 28 U.S.C. § 1404(a)

▬▬▬ The Court must now analyze the Defendants' motion under section 1404.[3] Defendants bear the burden of demonstrating to the Court that it should, in its sound discretion, decide to transfer the case. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (holding that the decision to transfer rests within the sound discretion of the court); *Time, Inc. v. Manning*, 366 F.2d 690, 699 (5th Cir.1966)(holding that the defendant bears the burden of demonstrating that the action should be transferred). In determining whether to grant a motion to transfer venue under section 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. *See In re Triton Ltd. Sec. Lit.*, 70 F.Supp.2d 678, 688 (E.D.Tex. 1999); *Robertson v. Kiamichi RR Co.*, 42 F.Supp.2d 651, 655 (E.D.Tex.1999).

**3.** Baskin–Robbins framed its motion as a FED. R. CIV. P. 12(b)(3) motion. Since neither party argues that venue is improper under 28 U.S.C. § 1391, a Rule 12(b)(3) motion is not the proper procedural device to enforce the

forum-selection clause. The Court, therefore, simply treats Baskin–Robbins' motion as if Baskin–Robbins had properly moved to transfer under § 1404(a) as directed by the Supreme Court in *Stewart*.

## A. Private Convenience Interests

■ Generally, the party seeking the transfer bears a heavy burden of showing that the convenience factors favor transfer. *See In re Triton,* 70 F.Supp.2d at 688. Moreover, the defendant seeking transfer cannot carry this burden by making unsupported assertions, but must properly establish the relevant facts. *See id.* ("Defendants seeking a transfer cannot carry their burden merely by making unsupported assertions, but rather must properly establish relevant facts by affidavit, deposition, or otherwise."). The private convenience factors include: (1) the convenience of the parties and witnesses; (2) the place of the alleged wrong; (3) the location of counsel; (4) the cost of obtaining the attendance of witnesses; (5) the accessibility and location of sources of proof; (6) the possibility of delay and prejudice if a transfer is granted; and (7) the plaintiff's choice of forum, which is usually given great deference. *See Robertson,* 42 F.Supp.2d at 655; *In re Triton,* 70 F.Supp.2d at 688 ("The plaintiff's choice of forum is paramount consideration in any determination of transfer request and that choice of forum should not be lightly disturbed.").

■ The presence of a forum-selection clause changes the analysis in that the Court must consider convenience and fairness in light of the parties express preference for the chosen forum. *See Stewart,* 487 U.S. at 29–30, 108 S.Ct. 2239 (stating that section 1404(a) places discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness"). While the presence of the forum selection clause is "a significant factor that figures centrally in the [ ] court's decision," the court may also consider the relative bargaining power of the parties. *Id.* at 29, 108 S.Ct. 2239.

■ As an initial matter, the Court must address the validity of the forum-selection clauses. Along with their Re-

sponse, the Plaintiffs filed twenty-seven affidavits setting forth the facts and circumstances indicating that the forum-selection clauses are invalid for fraud or overreaching. Plaintiffs are responding to the Defendants' assertion that *Bremen* controls the forum-selection clause issue. In *Bremen,* the Supreme Court held that in admiralty cases district courts should enforce forum-selection clauses unless the party in opposition "clearly shows that enforcement would be unreasonable and unjust, or that the clause was *invalid* for fraud or overreaching." 407 U.S. at 15, 92 S.Ct. 1907 (emphasis added). The Supreme Court later ruled that under *Bremen*'s invalidity exception, the inclusion of the forum-selection clause itself must be the result of fraud or coercion. *See Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Since the Court in *Stewart* stated that Bremen may prove "instructive" in diversity cases, 487 U.S. at 28, 108 S.Ct. 2239, courts in this district have used this same standard to determine *validity* of the forum-selection clauses, *i.e.,* whether the court should give them any weight at all in the section 1404 analysis. *See Brock v. Entre Computer Ctrs.,* 740 F.Supp. 428, 431 (E.D.Tex.1990). For the following reasons, the Court finds the forum-selection clauses in this case are valid and must be given appropriate consideration under section 1404 as directed by *Stewart.*

The Plaintiffs' affidavits generally allege that the Plaintiffs incurred substantial expense and entered into binding lease contracts before Defendants ever presented them with their contracts containing a forum-selection clause. (Pls.' Resp., Ex. 4, 8, 9, 10, 11, 20, 21.) Affidavits by some Plaintiffs state that their prior franchise agreements did not contain a forum-selection clause and that when Baskin–Robbins presented them with the option of signing a new agreement or disassociating with Baskin–Robbins, these Plaintiffs were not in a position to bargain over the terms of the renewal. (Pls.' Resp., Ex. 6, 7, 18, 19.)

Plaintiffs' claims that they signed the franchise agreements under duress is insufficient to invalidate the forum-selection clauses, which themselves must be the result of fraud or coercion. *See Scherk*, 417 U.S. at 519 n. 14, 94 S.Ct. 2449. Furthermore, Defendants point to a clause in each franchise agreement acknowledging receipt of the franchise agreement at least five days before executing it. (Defs.' Reply at 1.) The Defendants also provided evidence that each plaintiff received a copy of the Defendants' Uniform Franchise Offering Circular (UFOC) well before executing the franchise agreements. The UFOC is a prospectus containing certain disclosures and accompanied by copies of all contracts that Baskin–Robbins requires franchisees to sign. The UFOC also highlights the forum-selection clause. It is evident, therefore, that the Plaintiffs had, or at least should have had, sufficient notice of the forum-selection clause before they made significant outlays or incurred significant contractual obligations in expectation of signing a franchise agreement. While the these facts are evidence of the parties' relative bargaining power, the Court is not persuaded that the forum-selection clauses themselves were the result of fraud or coercion. Therefore, the Court will give these forum-selection clauses appropriate consideration in the transfer analysis.

### 1. Availability and Convenience of Parties & Witnesses

Given the preference expressed by Defendants and the owners of thirty-seven of the franchises for the Middle District of California through the forum-selection clause, the convenience of these parties would presumably be better served if the

Court transferred the case to that district. *See Stewart*, 487 U.S. at 29–30, 108 S.Ct. 2239. But as directed by *Stewart*, this does not end the analysis. The Court must also consider convenience, fairness, and the parties' relative bargaining power. *See id.* at 31, 108 S.Ct. 2239; *see also LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998); *Box v. Ameritrust Tex., N.A.*, 810 F.Supp. 776 (E.D.Tex.1992).

The fact that the forum-selection clauses are generally valid does not mean that the parties had equal bargaining power. Baskin–Robbins is a national corporation represented by counsel. It gave the Plaintiffs, who are individuals and small business, a form contract, which was not open to negotiation. The Plaintiffs submitted twenty-seven affidavits from franchisees and representatives of the corporate franchisees stating that Baskin–Robbins informed them that their franchise agreements would have to be executed "without any changes in the terms therein." (Pls.' Resp., Ex. 3–29.) Furthermore, many of the affidavits state that the Plaintiffs expended considerable capital or entered into binding leases before being presented with the franchise agreements.[4] In other affidavits, the franchisees state that they signed franchise agreements with forum-selection clauses only on renewal of previous franchise agreements that did not contain such a clause. (Pls.' Resp., Ex. 6, 7, 18, 19.) These franchisees were not in a position to bargain the terms of the renewal. Unless they accepted the contract as presented by Baskin–Robbins, they faced going from having a store with a national name brand and a supply of ice cream to

4. A typical example comes from Blair and Betty Clark's affidavits. (Pls.' Resp., Ex. 8, 9.) Their affidavits state that they relocated 680 miles from Rockwall, Texas to McAllen, Texas to receive a franchise. They also attended a multi-week training program and spent over $150,000 on the purchase and improvement of their franchise location before Baskin–Robbins presented them with a franchise agreement, which Baskin–Robbins told them must be signed "without change." Other affidavits claim capital outlays and commitments of up to $300,000 and lease obligations of up to $3,300 per month, all before Baskin–Robbins presented these Plaintiffs with an agreement containing a forum-selection clause. (Pls.' Resp., Ex. 21.)

a mom-and-pop store with no name brand and no supplier. Thus, these franchisees were in no position to bargain.

■ Defendants did not address these allegations in their response or submit affidavits to contradict Plaintiffs' testimony. So while the Court is not convinced that Defendants' conduct with respect to the forum-selection clauses constitutes fraud or overreaching, thus invalidating the clauses altogether, the Court finds that the parties did not have equal bargaining power. This apparent inequality in bargaining power is by no means dispositive. This fact merely reduces the weight the Court gives to the majority of the Plaintiffs' express preference for venue in the Middle District of California. *See Box*, 810 F.Supp. at 782 (finding "that the Plaintiff's allegation that the execution of the Collateral Purchase Agreement containing the forum-selection clause was induced in violation of the Bank–Tying Act reduce[d] the weight ... given to the forum-selection clause under the § 1404 analysis").

■ Other than the forum-selection clause, there is nothing to indicate that the Middle District of California would be more convenient for the parties and witnesses than the Eastern District of Texas. As the party seeking the transfer, Defendants must clearly specify the key witnesses expected to be called and make a general statement of what their testimony will cover. *See In re Triton*, 70 F.Supp.2d at 689–90. Defendants state in their motion that "Defendants have significant corporate operations in the Los Angeles area" and that "[t]he vast majority of Defendants' representatives likely to be involved in this matter live outside Texas and can travel to Los Angeles more conveniently than to Texarkana." (Def. Mot. at 11.) These assertions fall far short of meeting Defendants' burden. Beyond these bald assertions in their brief, Defendants failed to provide any information showing that the Defendants' representatives will be inconvenienced or burdened by having to testify in the Eastern District of Texas.

*See In re Triton*, 70 F.Supp.2d at 688. Furthermore, the convenience of the non-party witnesses, not party employees, is the more important factor in the transfer analysis, and Defendants failed to specify a single nonparty witnesses who would be inconvenienced by trying this case in the Eastern District of Texas. *See id.* at 690.

Defendants also point out the long drive many Plaintiffs will have to make to the courthouse in Texarkana. The Defendants' argument is essentially that, if many of the Plaintiffs will have to fly anyway, why not make them fly to the Middle District of California. (Def. Mot. at 10–11.) This is not persuasive that the California forum is more convenient. While the Plaintiffs in New Mexico, West Texas, the Rio Grande Valley, and Alabama will likely fly to Texarkana for trial, most of the other Plaintiffs are within reasonable driving distance. None of the Plaintiffs are within reasonable driving distance of California.

Plaintiffs, on the other hand, have identified ten present and former Baskin–Robbins representatives who live and work in Texas. Plaintiffs identify several of these representatives as the source of the Defendants' alleged misrepresentations and omissions. Plaintiffs also point out that the Defendants principal place of business has moved from California to Massachusetts, a fact which Defendants admit in their reply. This is not only further evidence that a transfer to California is not convenient, but it also calls into question the appropriateness of a transfer to California, as opposed to Massachusetts, under the forum-selection clause. The clause states:

"Any dispute ... shall be resolved in the federal or state courts in the judicial district in which Baskin–Robbins has its principal place of business, [which is], *as the case may be*, (a) the United States District, Central District of California or (b) the North Central District, Glendale,

of the Los Angeles County Superior Court...."

(emphasis added). The plain meaning of this clause appears to require the parties to resolve their disputes in Massachusetts—the designation of California merely incidental to Defendants' principal place of business being California at the time Defendants drafted the clause. When a forum-selection clause designates one parties' principal place of business, courts interpret that to mean the principal place of business at the time of suit. *See ABC Rental Sys., Inc. v. Colortyme, Inc.*, 893 F.Supp. 636 (E.D.Tex.1995). At best, the Defendants could argue that the clause is ambiguous, in which case it would be construed strongly against the Defendants. *See Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 957 (5th Cir.1974) (holding that an ambiguous forum-selection clause must be construed strongly against the party who drafted it).

In summary, the Court is not persuaded that this case will be more difficult or burdensome to try in the Eastern District, even in light of the apparent agreement between the Defendants and a majority of the Plaintiffs that the Middle District of California would be more convenient.

### 2. Location of Counsel

Defendants argue that because the Defendants' lead counsel is in Washington, D.C. and Plaintiffs' lead counsel is in Cleveland, Ohio, Texarkana is inconvenient for both sides. (Def. Mot. at 27). While this may be true, these facts offer no support for the argument that Central District of California is any less inconvenient. This factor favors neither forum.

### 3. Accessibility and Location of Proof

Defendants assert that Texarkana is "unlikely to be the situs of much discovery activity." (Def. Mot. at 12.) In support of their argument to transfer, Defendants raise two points—both of which are unpersuasive. First, Defendants asserts that most documentary evidence is located in California and Massachusetts. Defendants admit, however, that any documents can be copied and "shipped wherever they are needed." (Def. Mot. at 12.) As this Court has stated previously, when documents can be easily copied and shipped to the Eastern District, the Court does not consider their present location "an important factor in the transfer analysis." *In re Triton*, 70 F.Supp.2d at 690. Second, Defendants assert that depositions are likely to proceed primarily outside of Texas and instead will proceed "around the country," including Chicago and Atlanta, where the witnesses are located or at places agreed upon by counsel. (Def. Mot. at 12.) The Court fails to see how these facts support transfer to the Middle District of California. This factor also does not significantly favor either forum.

### 4. Plaintiffs' Choice of Forum

Ten of the franchise agreements at issue in this case do not contain forum-selection clauses. These Plaintiffs' choice of forum is therefore given great deference. *See In re Triton*, 70 F.Supp.2d at 688 ("Plaintiff's right to choose a forum is 'well-established' and his choice is highly esteemed."). Furthermore, judicial economy favors keeping these cases together. *See generally Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (holding that a district court should consider whether transfer will avoid duplicative litigation, affect judicial economy, or prevent waste of time and money). It would be a waste of judicial resources to transfer the cases based on franchise agreements containing forum-selection clauses and keep the remaining cases in this district. The Court feels strongly, however, that it would be unfair to these Plaintiffs to force them to a forum where they did not agree to litigate their disputes.[5] Therefore, this factor weighs

**5.** Some of the Plaintiffs who signed agreements without a forum selection clause have

heavily in favor of retaining the case in the Eastern District of Texas.

## B. Public Interest Factors

■ The public interest factors include: (1) the administrative difficulties caused by court congestion; (2) the local interests in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *See In re Triton*, 70 F.Supp.2d at 688; *Robertson*, 42 F.Supp.2d at 655. These public interest factors cannot be affected by private parties in a contract. Therefore, the Court will not consider the existence the forum-selection clause in its evaluation of these factors.

### 1. Court Congestion

Relying on stale statistics, the Defendants assert that cases in the Central District of California are generally resolved more quickly than cases in this Court. In *In re Triton*, this Court noted that statistics from the years 1996 to 1997 are no longer relevant. 70 F.Supp.2d at 690. With appointment of Judge T. John Ward to the Eastern District of Texas, this Court now has only the Texarkana Division and is able to move cases much faster. Therefore, this factor does not weigh in favor of transfer.

### 2. Local Interests in Adjudicating the Dispute

Of the forty-seven franchises at issue in this case, there is one in New Mexico, one in Mississippi, eight in Louisiana, twelve in Alabama, and twenty-five in Texas. Of the twenty-five in Texas, five are in the Eastern District—one in Beaumont, one in Jasper, one in Longview, and two in Texarkana, mere blocks from this courthouse. The Defendants argue that since only five of the franchises are located in the Eastern District, the Central District of California is the only district "legitimately concerned with all the franchises, as the franchisor has a significant presence there." (Def. Mot. at 14.) Defendants' argument is basically that they are entitled to more consideration than the individual Plaintiffs because they are a nationwide franchisor and not a small business. This is not a persuasive argument. The citizens of the Eastern District of Texas have a substantial interest in protecting their fellow citizens from wrongdoing by franchisors in the sale and operation of franchises within the Eastern District. *See generally In re Triton*, 70 F.Supp.2d at 691 (finding "that the citizens of the Eastern District of Texas have a substantial interest in correcting any wrongdoing on the part of companies who trade stocks on a national basis").

## C. Conclusion

In conclusion, the Defendants have failed to carry their burden and show this Court that it should, in its discretion, transfer this case to the Middle District of California. While a majority of the Plaintiffs have a valid forum-selection clause in their contracts, these contracts were not the result of equal bargaining power. Furthermore, other than the forum-selection clause, Defendants have presented no evidence to the Court indicating that the

---

other franchises that are subject to a forum-selection clause. (Def.Mot., Ex. A5, A21, A24) (Flavio Olivarez); (Def.Mot., Ex. A26, D5) (Madhu Patel & Naran K. Patel). Two of the corporate franchisees not subject to forum-selection clauses have shareholders or related corporations with franchises subject to a forum-selection clause. (Def.Mot., Ex. A3, A25) (Larry Brock and Larry Bock Enterprises, Inc.); (Def.Mot., Ex. A17, A29) (Tifkin Corp. and PTK, Inc.). Defendants argue that because these Plaintiffs agreed to resolve dis-

putes with respect to one franchise in California, the Court should give less weight to their choice of forum regarding disputes involving other franchises not subject to a forum-selection clause. The Court believes, instead, that fairness requires it to consider each franchise individually. If anything, this evidence bolsters Plaintiffs' argument that they were in an inferior bargaining position to the Defendants when negotiating the later franchise agreements containing the forum-selection clauses.

Middle District of California is more convenient or less burdensome. Evidence presented by the Plaintiffs, on the other hand, tends to demonstrate that it is a less convenient forum. Plaintiffs identified several key witnesses who reside in Texas. Several of these witnesses and many Plaintiffs live within driving distance of the Court. These facts, along with the inequality of bargaining power between the Plaintiffs and Defendants, tend to neutralize the presumption set up by the forum-selection clauses.

Other factors favor keeping the case in the Eastern District of Texas. The Plaintiffs whose contracts do not contain forum-selection clauses are entitled to have their choice of forum honored, and judicial economy is best served by keeping these cases together. In addition, the citizens of the Eastern District have a substantial interest in the outcome of this case as it affects the lives of their fellow citizens.

Therefore, the Defendants motion to transfer to the Middle District of California is **DENIED**.

## IV. DEFENDANTS' MOTION TO DISMISS SHAREHOLDER PLAINTIFFS

Defendants moved to dismiss Plaintiffs who are shareholders in corporate franchisees but do not own franchises in their individual capacity. The motion asserts that the complaint fails to state a cause of action on behalf of these Plaintiffs individually and that these Plaintiffs do not have standing to sue on behalf of the corporations under the laws of the states in which they are incorporated. Plaintiffs did not respond to this portion of the Defendants' motion. However, in the Plaintiffs' Second Amended Complaint, filed after the Defendants' motion to dismiss, the Plaintiffs explained that the individual shareholders have joined as plaintiffs "out of an abundance of caution in order that they may assert their claims in the event that the viability of their close corporation is questioned by Defendants herein." (Pls.' 2d Am. Compl. at 12.)

The Defendants and the Court both found it difficult to identify the individual franchises and their owners. This problem stems from the lack of details provided by the Plaintiffs. The Complaint merely named the plaintiffs and where they reside and do business. As for corporate Plaintiffs, the Complaint merely names the state in which the corporation is organized and its form of organization. The Complaint fails to identify the individual franchises. Thus, the Defendants and the Court are unable to tell from the Complaint how many franchises an individual plaintiff owns or whether the franchise is owned by an individual or a corporation. In Appendices A & B of Defendants' Supplemental Memorandum, Defendants attempted to sort out exactly who the proper Plaintiffs are in this case and what franchises are at issue. The Court bases the chart below on the Defendants' appendices and an independent review of the franchise agreements attached to the Defendants' motion.[6]

The following chart shows the Plaintiff corporate franchise owners and their shareholders.

| Corporate Franchisee | Organization | Shareholders |
| --- | --- | --- |
| Larry Brock Enterprises, Inc. | Texas close corporation | Larry E. Brock and Cathy D. Brock |

**6.** Along with its motion, the Defendants supplied copies of all of the franchise agreements that they believe are at issue in this case. Plaintiffs have offered no objections to the inclusion of only these agreements or to the charts in the Defendants' Supplemental Memorandum. Since the Plaintiffs have not made a similar effort to inform the Court of the exact franchises at issue or objected to the Defendants' suggestion, the Court assumes that the Plaintiffs agree with the Defendants on this issue.

| Corporate Franchisee | Organization | Shareholders |
|---|---|---|
| San Angelo Ice Cream Co. No. 2, Inc. | Texas close corporation | Paula J. Wolslager |
| C & H Stores, Inc. | Texas close corporation | Duke Hood, Michael A. Collins, and Homer Hodge |
| Luche, Inc. | Texas close corporation | Nancy Horkey |
| Mike Higgins Enterprises, Inc. | Texas close corporation | Alice M. Higgins and William M. Higgins |
| Ice Cream Services of Texas, LLC | Texas limited liability company | Taylor Hobbs and C. Terry Hobbs |
| PTK, Inc. | Louisiana close corporation | Patsey G. Merrill |
| Tifkin Corp. | Louisiana close corporation | Patsey G. Merrill and Gerald E. Merrill |
| Tommy's RV Rentals, Inc. | Louisiana close corporation | Marlene Joyce and Tommy Joyce |
| PAR–Group, Inc. | Louisiana close corporation | Neil C. Ponthie |
| Mundi, Inc. | Alabama close corporation | Samuel A. Mundi |
| B & S Ventures, Inc. | Alabama close corporation | William O. Jollit and Patricia C. Jollit |

 The Defendants' motion first argues that the Complaint does not state a cause of action on behalf of these Plaintiffs as individuals. *See* FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is not appropriate unless the face of the plaintiff's pleadings show, beyond doubt, that the plaintiff cannot prove any set of facts that would entitle it to relief. *See Garrett v. Commonwealth Mtg. Co.,* 938 F.2d 591, 594 (5th Cir.1991). In considering a Rule 12(b)(6) motion, the district court may consider "an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Steinhardt Group, Inc. v. Citicorp,* 126 F.3d 144 (3d Cir.1997) (construing a limited partnership agreement attached to defendant's Rule 12(b)(6) motion to dismiss).

 The Defendants' motion argues that the Plaintiffs' Second Amended Complaint, outlined above, only states a cause of action on behalf of the franchisees and does not state a cause of action on behalf of any of these shareholders of corporate franchisees in their individual capacity. After a careful review of the Complaint, and in the absence of a response from the Plaintiffs on this issue, the Court agrees. The Complaint only states a cause of action for the franchisees, and the laws of Texas, Louisiana, and Alabama all prohibit shareholders from bringing suit for damages to their corporation. *See Wingate v. Hajdik,* 795 S.W.2d 717 (Tex.1990) ("A corporate shareholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong."); *El T. Mexican Restaurants, Inc. v. Bacon,* 921 S.W.2d 247, 251 (Tex.App.-Houston [1st Dist.] 1995, writ denied) ("A shareholder may not sue in his own name and for his own benefit on a cause of action belonging to the corporation, even if the shareholder is indirectly injured."); *Joe Conte Toyota, Inc. v. Toyota Motor Sales,* 689 So.2d 650, 654 (La.Ct.App.1997) ("Shareholders and officers of a corporation ... do not have a personal right to sue in Louisiana to recover for acts committed against, or causing damage to the corporation."); *Beaver Constr. Co., Inc. v. Lakehouse, L.L.C.,* 742 So.2d 159 (Ala.1999) (holding that members in a limited liability company who were not signatories to a contract between the defendant and the limited liability company could not recover under the contract).

Two of the shareholder Plaintiffs identified by the Defendants, however, Paula Wolsager and Larry Brock, also own franchises in their individual capacity. (Def.Mot., Ex. A25, A27.) The complaint does, therefore, state a cause of action on their behalf.

Therefore the Court finds that this portion of the Defendants' motion is well taken and is hereby **GRANTED** and the following Plaintiffs are hereby **DISMISSED**:

| |
|---|
| Duke Hood, Michael A. Collins, and Homer Hodge |
| Nancy Horkey |
| Alice M. Higgins and William M. Higgins |
| Taylor Hobbs and C. Terry Hobbs |
| Patsey G. Merrill and Gerald E. Merrill |
| Marlene Joyce and Tommy Joyce |
| Neil C. Ponthie |
| Samuel A. Mundi |
| William O. Jollit and Patricia C. Jollit |

There are two other corporations who have been named as Plaintiffs: Dan Cross Enterprises, Inc. and Daniels Ice Cream, Inc. There is no evidence, however, that these corporations are franchisees. It appears from the Plaintiffs' pleadings and Defendants' exhibits that the shareholders of these corporations are James D. Daniels and Caron Daniels, who own and operate franchises in Monroe, Louisiana in their individual capacities.[7] (Def. Mot., Ex. D14, D 20.) The name of another person who appears from the Second Amended Complaint to be a shareholder of at least one of these two corporations, James G. Daniels, does not appear as a franchisee on any franchise agreements in the record, nor do the Defendants claim that he is a shareholder of any other corporate franchisees. However, since the Defendants do not move dismiss any of these Plaintiffs, the Court leaves their uncertain status in this case undisturbed.

## V. MOTION TO DISMISS DAVID STURGEON

Finally, Defendants move to dismiss David C. Sturgeon as a plaintiff. Defendants contend that they were unable to determine from the complaint or their own records who David Sturgeon is or how he relates to this case. Plaintiffs did not respond to this motion, nor address the Defendants' confusion in their Second Amended Complaint. The Court also was unable to determine from the Complaint or the franchise agreements attached to Defendants' motion Mr. Sturgeon's relation to this case. Therefore, Defendants' motion is **GRANTED** and Plaintiff David Sturgeon is hereby **DISMISSED**.

## VI. CONCLUSION

Having considered the Defendants' Motions to Dismiss and Transfer, the Plaintiffs' Response, and the Defendants' Reply and Supplemental Memorandum and having set forth its findings in a Memorandum Opinion, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Defendants' Motion to Dismiss with Respect to with Respect to Certain Plaintiffs and Transfer Venue with Respect to the Remaining Plaintiffs is hereby **DENIED in part** and **GRANTED in part**.

Defendants' Rule 12(b)(3) motion to dismiss is **DENIED**.

Defendants' motion to transfer venue under 28 U.S.C. § 1404 is **DENIED**.

Defendants' Rule 12(b)(6) motion to dismiss is **GRANTED** in part and the following Plaintiffs are hereby **DISMISSED**: Duke Hood, Michael A. Collins, Homer Hodge, Nancy Horkey, Alice M. Higgins, William M. Higgins, Taylor Hobbs, C. Terry Hobbs, Patsey G. Merrill, Gerald E. Merrill, Marlene Joyce, Tommy Joyce,

---

**7.** One these agreements between Baskin–Robbins and James D. Daniels and Caron Daniels is actually an agency agreement and not a franchise agreement. Under this agreement, the Daniels agreed to operate a Baskin–Robbins location in a Wal–Mart store. Neither side raises this as a distinction of any importance.

Neil C. Ponthie, Samuel A. Mundi, William O. Jollit, Patricia C. Jollit, and David C. Sturgeon.

It is further **ORDERED** that these Plaintiffs have 30 days from the date that this order is signed to amend the Complaint and state a cause of action upon which relief can be granted to them in their individual capacity.