**MYLAN PHARMACEUTICALS INC., Plaintiff,**

v.

**AMERICAN SAFETY RAZOR COMPANY; Megas Beauty Care, Inc., D/B/A Personna Medical; BBA U.S. Holdings, Inc.; BBA Nonwovens Simpsonville, Inc., and International Paper Company, individually and d/b/a Veratec, Defendants.**

**No. 1:02CV88.**

United States District Court, N.D. West Virginia.

Dec. 12, 2002.

---

Thomas H. Newbraugh, Mylan Pharmaceuticals Inc., Morgantown, WV, James W. Kraus, Carl J. Rychcik, Robert V. Campedel, Doepken, Keevican & Weiss, Pittsburgh, PA, for Plaintiff Mylan Pharmaceuticals Inc.

David B. Thomas, George G. Guthrie, Allen Buthrie & McHugh, Charleston, WV, for American Safety Razor Company, Megas Beauty Care, Inc.

William J. Witte, Riley, McNulty, Hewitt & Sweitzer, Pittsburgh, PA, for BBA U.S. Holdings, Inc., BBA Nonwovens Simpsonville, Inc.

William J. Witte, Riley, McNulty, Hewitt & Sweitzer, Pittsburgh, PA, John H. Tinney, The Tinney Law Firm, PLLC,

Charleston, WV, Sheri E. Hametz, James E. Brandt, Blair Connelly, Latham & Watkins, LLP, New York City, for International Paper Company.

### ORDER DENYING DEFENDANT INTERNATIONAL PAPER'S MOTION TO DISMISS OR TRANSFER

KEELEY, Chief Judge.

This matter comes before the Court on Defendant International Paper Company's Motion to Dismiss or Transfer. The motion is fully briefed and ripe for review. For the reasons that follow, the Court **DENIES** the motion.

### Background.

Plaintiff Mylan Pharmaceuticals, Inc. (Mylan) bought 10 lots of defective pill-bottle cotton balls from Defendant American Safety Razor Company (ASR), which supplied the cotton through its division, Megas Beauty Care d/b/a Personna Medical (Personna). Personna obtained the cotton from Defendant International Paper Company (IP) through its Veratec division. In July 1998, IP sold Veratec to Defendants BBA Nonwovens Simpsonville and BBA U.S. Holdings (together, BBA Nonwovens), thus making BBA Nonwovens Personna's new cotton supplier (via Veratec).

The complaint alleges that, in mid–1998, Personna requested that Veratec treat its cotton with extra hydrogen peroxide. Personna then used some of this treated cotton to fill Mylan's orders. Allegedly, the treatment made the cotton unfit for pharmaceutical use. In early March 1999, Personna finally informed Mylan that specific lots of cotton had been treated with the hydrogen peroxide and that Mylan should act accordingly. Mylan investigated and discovered that much of the affected cotton had already been used in pill bottles and had damaged the drugs inside.

Mylan now seeks damages for the defective cotton, asserting that all the Defendants knew about its needs and therefore breached actual or implied contracts.

BBA Nonwovens has asserted cross claims for indemnification and contribution against ASR, Personna, and IP. ASR has asserted cross claims for indemnification and contribution against BBA Nonwovens and IP. Personna has asserted cross claims for indemnification and contribution against BBA Nonwovens and IP. IP has asserted cross claims for indemnification and contribution against ASR and Personna; IP has carefully avoided asserting any cross claims against BBA Nonwovens.

IP now moves to dismiss BBA Nonwovens' cross claim against it, or, alternatively, to transfer the claim to the Southern District of New York. IP bases its motion entirely upon the presence of a forum selection clause contained in an Amended and Restated Purchase Agreement entered into in April 1998 between IP and the BBA Nonwovens entities. The Forum selection clause in the Amended and Restated Purchase Agreement states:

> Seller and each Member of Buyer Group (a) agree that any suit, action or proceeding arising out of or relating to this Agreement shall be brought solely in the state or federal courts of New York; (b) consents to the exclusive jurisdiction of each such court in any suit, action or proceeding relating to or arising out of this Agreement; (c) waives any objection which it may have to the laying of venue in any such suit, action or proceeding in any such court; and (d) agrees that service of any court paper may be made in such manner as may be provided under applicable laws or court rules governing service of process.

.    .    .    .    .

This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York (regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof) as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

The parties do not contest the validity of the forum selection clause.

### Motion to Dismiss.

IP facially brings its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). However, IP does not structure its argument under any of these sections, but rather makes the assumption that the Court should simply enforce a valid forum selection clause and dismiss the cross claim.

■ This approach does not rest well with the Supreme Court's ruling in *Stewart v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (holding that motions to transfer based on a forum selection clause are to be dealt with under standards established by Congress in 28 U.S.C. § 1404, with the forum selection clause receiving its proper, but not controlling, weight in the statutory factor analysis). While academics continue to debate the proper vehicle for effectuating forum selection clauses, *see Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 388 n. 3 (1st Cir.2001) (outlining debate), the parties have not raised this issue, and the Court concludes that the best approach in this case is that touched upon in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972):

The argument that such clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resis-

tance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals. No one seriously contends in this case that the forum selection clause "ousted" the District Court of jurisdiction over Zapata's action. The threshold question is *whether that court should have exercised its jurisdiction* to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause.

407 U.S. at 12, 92 S.Ct. 1907 (emphasis added). Thus, the presence of a forum selection clause allows the district court to decline the exercise of jurisdiction it otherwise possesses.

■ Forum selection clauses are presumptively enforceable absent a strong showing that the clause should be set aside or not enforced because the circumstances would render it "unreasonable." *M/S Bremen*, 407 U.S. 1, 92 S.Ct. 1907 (establishing rule). Forum selection clauses can be unreasonable where there is a possibility of prejudice to the parties through conflicting judgments by the concurrent litigation in two courts, or when forcing them to refile subordinate claims in a separate court would be a gross waste of the parties' and the court's resources. *See Taylor Investment Corp. v. Weil*, 169 F.Supp.2d 1046, 1061 (D.Minn.2001); *Ace Novelty, Inc. v. Vijuk Equip., Inc.*, 1991 WL 150191, at *7 (N.D.Ill. July 31, 1991).

■ IP argues that the forum selection clause *sub judice* was entered into fairly, is valid, and that enforcement is reasonable. IP states that the parties considered the relative convenience of the negotiated ven-

ue, both West Virginia and New York encourage enforcing such agreements, and the consequences of enforcing the forum selection clause were foreseeable at the time of formation. In support of its position, IP cites two unpublished cases that purportedly dismiss cross claims on the basis of a forum selection clause: *TMC Co., Ltd. v. M/V Mosel Bridge,* 2002 WL 1880722, at *1–2 (S.D.N.Y. Aug.15, 2002); and *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro,* 2001 WL 300735, at *16 (S.D.N.Y. Mar.27, 2001). Both are distinguishable from this case.

*TMC* was an action for damages resulting from the thawing of a cargo of frozen beef that was shipped from California to Japan. 2002 WL 1880722 at *1. The actual shipping agent moved to dismiss both a cross claim against it and the amended complaint on the basis of a forum selection clause contained in the shipping agreement, which required litigation in Japan. *Id.* The court granted the motion, and the defendant shipping agent was dismissed from the action entirely. *Id.* at *2.

In the present case, IP seeks to dismiss only BBA Nonwovens' cross claim. Even if IP is successful, it will remain in this Court to answer Mylan's complaint and the cross claims filed by ASR and Personna. Thus, assuming BBA Nonwovens will refile its cross claim in the Southern District of New York, IP's request creates an issue of judicial inefficiency that was not present in the *TMC* case.

In *U.S. Fidelity,* the court enforced the forum selection clause with respect to a single cross claim. 2001 WL 300735 at *16. In doing so, the court specifically noted that it "is possible to conceive of situations where there may be a strong public policy overcoming a forum selection clause, based on the interests of fairness, convenience to the parties, and judicial economy when all of the issues were other-wise being litigated before the court." *Id.* (citing *Nippon Fire & Marine Ins. Co. v. M/V Springwave,* 92 F.Supp.2d 574, 577 (E.D.La.2000) (declining to enforce a forum selection clause where the same facts and same legal theories would be litigated against the same party by other parties who were not parties to the forum selection clauses)). The case before the court presented a key mitigating circumstance: the court before which the dismissed cross claim would be refiled, Brasil, already had a related case on its docket. *Id.* Therefore, the dismissal did not create any inefficiency in the use of judicial resources. *Id.*

The exception noted in *U.S. Fidelity* applies in the present case. If dismissed, BBA's cross claim would be refiled in the Southern District of New York, which currently does not have any related litigation on its docket. A further waste of judicial resources would occur should the Southern District of New York transfer the newly filed independent action back to this district where many other related claims are already pending. *See Savin v. CSX Corp.,* 657 F.Supp. 1210, 1213 (S.D.N.Y.1987) (transferred a case subject to a valid Forum selection clause to district not approved in Forum selection clause where related complex securities litigation was pending for over 10 years). Furthermore, the cross claim at issue is one for contribution and indemnification, a subordinate claim that cannot be addressed until the main issue of liability is resolved. Finally, both BBA Nonwovens and IP will remain in this case whether or not the cross claim is dismissed.

Dismissing the cross claim and forcing the parties to refile in New York would not only increase their own costs, but also force the Southern District of New York to expend its resources in handling the case, by either letting it remain on its docket

until this action is resolved, or, as discussed above, transferring it back to this Court. Such an exercise would be a gross waste of the parties' and the Court's resources. Enforcement of the forum selection clause is therefore unreasonable.

### Motion to Transfer.

IP alternatively requests that the Court transfer BBA Nonwovens' cross claim to the Southern District of New York. 28 U.S.C. § 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ Section 1404(a) only authorizes the transfer of an entire action, not individual claims. *Technosteel, LLC v. Beers Const. Co.*, 271 F.3d 151, 157 (4th Cir.2001) ("courts have adhered to the general rule that § 1404 transfer 'contemplates a plenary transfer of the entire case' "); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir.1991) (same) (citing *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968); 15 Moore's Fed. Prac. & Proc., § 3846 at 363).

■ Individual claims can be transferred only if they are first severed under Federal Rule of Civil Procedure 21. *Id.* IP cites no cases supporting the transfer of a single subordinate claim, and does not ask that the Court sever the cross claim. Also, for the reasons set forth in the previous section, transferring this cross claim to the Southern District of New York would be a gross inconvenience for all involved.

### Conclusion.

Exercising the Court's discretion to give effect to the forum selection clause and dismiss BBA Nonwovens' cross claim against International Paper would be un-

reasonable in this case. The Court, therefore, **DENIES** International Paper's Motion to Dismiss. Transfer of the cross claim alone is not permitted under the Federal Rules of Civil Procedure, and to do so would be an inconvenience for the parties. Accordingly, the Court also **DENIES** International Paper's alternative Motion to Transfer.

**IT IS SO ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.