W. Hamill McNAIR, Ronnie Crosby, Samuel Perkins, John C. Harrel, Clarence V. Prince, John Emory Pryor, Robert D. Rushing, James H. Rushing, Jr. Tommy L. Heath, Alvin Heath, Phillip Braswell, Martin L. Stone, Dean Stone Laverne Stone, Garland T. Byrd, Billy Paulk, Clifford Lane Oliver, II, Ronnie Thompson, Tunaep Farms, Inc., and Pine Green, Inc., Plaintiffs,

v.

MONSANTO COMPANY, Pharmacia Corporation, as successor by merger with Monsanto Company and Delta and Pine Land Company, Defendants.

Nos. 1:02–CV–50–S WLS, 1:02–CV–120–4 WLS.

United States District Court, M.D. Georgia, Albany Division.

Aug. 25, 2003.

---

Frank C. Vann, Camilla, GA, James Lee Paul, Matthew J. McCoyd, Eric C. White, Atlanta, GA, for Plaintiffs.

Phillip A. Bradley, Kristen M. Pollock, Atlanta, GA, Dawn Gantt Benson, Albany, GA, Stephen L. Thomas, Jackson, MS, for Defendants.

### ORDER

SANDS, Chief Judge.

Currently before the Court is Defendants', Monsanto Company and Pharmacia Corporation. Amended Motion to Transfer (Doc. No. 99), and Defendant Delta and Pine Land Company's Joinder In Amended Motion to Transfer and Brief In Support Thereof. (Doc. No. 105). The Defendants move to transfer said action to the United States District Court for the Eastern District of Missouri pursuant to a forum selection clause and 28 U.S.C. § 1404(a)(1993 & Supp.2002).

In addition, before the Court are Plaintiffs' Notice Of Objection To And Motion To Strike Papers Attached As Exhibits 1, 18, 19, 20, 21, and 22 To The Memorandum Of Law In Support Of Defendants' Amended Motion To Transfer (Doc No. 233); Renewed Notice Of Objection To And Motion To Strike Testimony Of The August 2, 2002, Declaration Of Carl M. Casale And Notice Of Objection To And Motion To Strike Testimony Of The Declaration Of Carl M. Casale, (Doc. No. 238); Notice Of Objection To And Motion To Strike Statements Contained In "Memorandum Of Law In Support Of Defendants' Amended Motion To Transfer" And "Defendant Delta And Pine Land Company's Joinder In Amended Motion To Transfer And Brief In Support Thereof (Doc. No. 239)"; Notice Of Objection To And Motion To Strike Paragraph 5 Of Declaration Of David J. Rhylander (Doc. No. 241); Notice of Objection And Motion To Strike Papers Attached As Exhibits C, D, and E, To Defendants' Response To Plaintiffs' Notice Of Objection And Motion To Strike Paragraph 5 Of The Declaration Of Davis J. Rhylander (Doc. No. 351);Notice Of Objection To And Motion To Strike Testimony Of The March 7, 2003, Declaration Of David J. Rhylander (Doc. No. 352); and Notice of Objection To And Motion To Strike Testimony Of The February 27, 2003, Declaration Of Ann Shackelford. (Doc. No. 353). For the reasons discussed below, the Court finds that Defendants' motions to transfer should be **GRANTED** and Plaintiffs' motions to strike should be **DENIED**.

### BACKGROUND FACTS

This diversity action, filed April 5, 2002, is brought by twenty (20) Georgia farmers

(hereinafter "Plaintiffs") against Defendants Monsanto Company ("Monsanto"), Pharmacia Corporation ("Pharmacia"), as successor by merger with Monsanto Company, and Delta and Pine Land Company ("Delta Pine")(hereinafter collectively referred to as "Defendants").[1] Monsanto's principle place of business and headquarters are located in St. Louis, Missouri. Pharmacia's principle place of business is the State of New Jersey. Delta Pine's principle place of business is located in the State of Mississippi. All three Defendants are incorporated under the laws of Delaware. Plaintiffs allege that the cotton crop grown from seed produced and sold by Defendant Delta Pine, which contained the patented gene technology of Defendant Monsanto, experienced severe failure or reduction in yield. At issue specifically are the acres Plaintiffs planted in Georgia with the 1998 DP/Paymaster Cottonseed. (Compl.¶¶ 51, 52, Doc. No. 1).[2] Plaintiffs have asserted the following claims against all Defendants: 1) Breach of Express Warranty (Count I); 2) Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose (Count II); 3) Product Liability–Recovery for Sale of a Defective Product (Count III); 4) Negligence (Count IV); 5) Negligent Misrepresentation (Count V); and 6) Fraud (Count VI).

On May 28, 2002, Defendants, Monsanto, Pharmacia and Delta Pine, filed their initial Motion To Transfer. (Doc. No. 9). The Court held a discovery and scheduling conference on Thursday, August 8, 2002. At the parties' request, discovery was stayed on the merits but allowed to proceed on the issue of transfer of venue only. (Doc. No. 27). After completion of discovery, Defendants filed Monsanto Company and Pharmacia Corporation's Amended Motion to Transfer and Defendant Delta and Pine Land Company's Joinder In Amended Motion to Transfer and Brief In Support Thereof. (Doc. Nos. 99, 105).[3] As per the Plaintiffs' request, the Court heard oral arguments on the issue of transfer and matters relating thereto on August 11, 2003. Defendants. Monsanto and Pharmacia, move to transfer said action to the United States District Court for the Eastern District of Missouri pursuant to the forum selection clause found in

---

1. Defendant Pharmacia is the successor by merger between Pharmacia & Upjohn Co., and Defendant Monsanto, pursuant to a merger completed on March 31, 2000. (Compl.¶ 20, Doc. No. 1). In footnote 1 of Defendants' Monsanto and Pharmacia's brief in support of Defendants' motion to transfer, Defendants contend that Pharmacia is not a proper party to this action because on September 1, 2000, the assets and liabilities of the agricultural business were transferred from Pharmacia to Monsanto. Plaintiff disagrees asserting that as the successor by merger Pharmacia is liable for Plaintiffs' claims concerning actions by Monsanto Co., which arose prior to the merger of Monsanto Co., and Pharmacia & UpJohn, Inc. Neither party cites legal authority in support of their respective positions. Since discovery was limited to the issue of transfer, the Court concludes that Pharmacia's status as a proper defendant is not an issue properly before the Court at this time. If Defendants believe that Pharmacia is not a proper party to this action then they should file the appropriate motion supported by authority to have Pharmacia dismissed as a party to this suit.

2. The 1998 DP/Paymaster Cottonseed was developed by Delta Pine and Monsanto, utilizing gene technology developed and patented by Monsanto. The parties have not engaged in full discovery on the merits, thus, the facts are limited to those which relate to the transfer issue.

3. Upon receipt of the Defendants' amended motions and Plaintiffs' responses relating thereto, the Court denied without prejudice Defendants' original motions to transfer venue and Plaintiffs' motions to strike relating thereto, to the Court's consideration of Defendant's amended motion to transfer. (Doc. No. 319).

Monsanto's Technology Agreement. Defendant Delta Pine joins in the motion. Defendants assert that a condition to the purchase and use of the cottonseed containing Monsanto's gene technology is that the purchaser and user enter into a license agreement called the Monsanto Technology Agreement. Defendants contend that seventeen (17) out of eighteen (18) Plaintiffs entered into a Monsanto Technology Agreement regarding their 1998 crops (hereinafter "1998 Agreement"). The 1998 Agreement contains the following forum selection clause:

> This Agreement is governed by the laws of the State of Missouri and the United States (other than the choice of law rules). The parties consent to the exclusive jurisdiction of the U.S. District Court for the Eastern District of Missouri, Eastern Division, and the Circuit Court of the County of St. Louis, State of Missouri, for all disputes arising under this Agreement.

The forum selection clause is printed on the back of the single sheet contract. It is the only information printed in capital letters. It is undisputed that fifteen (15) Plaintiffs signed the 1998 Agreement containing the forum selection clause. (Defs.' Monsanto & Pharmacia, Brief Supp. Amend. Mot. To Transfer, Exs. 3 through 17; Defs.' Reply In Supp. Mot. To Transf., Doc. No. 320).[4] The fifteen (15) Plaintiffs'

signatures appear on the front of the contract below the statement "I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them." (*See* Defs.' Exs. 3–17).

In dispute is whether a valid and enforceable 1998 Agreement containing the forum selection clause exists as to five (5) Plaintiffs: Tommy Heath, Martin Stone, Dean Stone, Laverne Stone, and John Harrel. Defendants submit a signed 1998 Agreement by Alvin Health and assert that it is applicable to Tommy Heath as well since they share a farming operation and do not assert separate claims. Defendants do not submit a 1998 Agreement signed by Martin Stone, but assert that he admitted in deposition that he signed a Technology Agreement in December of 1997, regarding his 1998 cotton crop. (*Id.* at 4; Martin Stone Depo., pp. 23–27, 37–40). Similarly, Defendants do not submit a 1998 Agreement regarding the 1998 crop signed by Plaintiffs' Dean Stone or Laverne Stone. It is undisputed that Plaintiff, John Harrel, did not sign a 1998 Agreement.[5] Defendants also assert that transfer is in the interest of justice and appropriate for all of the Plaintiffs' claims pursuant to 29 U.S.C. § 1404(a).

Plaintiffs oppose transfer of any and all of their claims and assert that the forum selection clause should not be enforced on

---

4. Defendants' exhibits 3 through 17 are fourteen (14) signed 1998 Agreements: Crosby (Defs.' Ex. 3); Oliver (Defs.' Ex. 4); Prince (Defs.' Ex. 5); Byrd (Defs.' Ex. 6); Perkins (Defs.' Ex. 7 and 8); Alvin Heath (Defs.' Ex. 9); Braswell (Defs.' Ex. 10); Thompson (Defs.' Ex. 11); James Rushing, Jr., (Defs.' Ex. 12); Paulk (Defs.' Ex. 13); Pryor (Defs.' Ex. 14); Pinegreen, Inc., (Defs.' Ex. 15); McNair (Defs.' Ex. 16); and Tunaep Farms (Defs.' Ex. 17). Attached to its Reply Defendants submit a faxed copy of a 1998 Agreement signed by Robert D. Rushing. (Defs.' Raply In Supp. Of Mot. To Transfer, Unnumbered Attachment, Doc. No. 320). The Plain-

tiffs do not challenge the validity of the faxed copy. Although not an official part of the record, Plaintiffs offered illustrations which indicated a signed agreement by Robert D. Rushing. (Doc. No. 362).

5. Defendant Delta Pine argued for the first time during oral argument that John Harrel was bound by a forum selection clause contained in a Monsanto Technology Agreement he signed in 1997 because the terms of the 1997 Agreement continued until either party terminates the agreement, but later recanted that argument upon a closer reading of the 1997 contract.

several grounds. Plaintiffs challenge the validity and enforceability of the forum selection clause as to all Plaintiffs based on lack of notice. (Pls.' Resp. To Defs.' Mot. To Transfer at 7–8, Doc. No. 230). Plaintiffs assert that Defendants have failed to produce written agreements for five (5) Plaintiffs: John C. Harrel, Tommy L. Heath, Martin Stone, Dean Stone and Laverne Stone. Plaintiffs argue that these five (5) Plaintiffs' claims can not be transferred pursuant to the forum selection clause and it would be in the interest of justice to keep the entire case in the Middle District of Georgia because it is a more convenient forum. Plaintiffs argue that Defendants', Pharmacia and Delta Pine, can not rely on the forum selection clause because they are not parties to the contract and Plaintiffs' claims against them do not arise under the 1998 Agreement. Plaintiffs further argue that their tort law claims are not transferable because they do not arise under the 1998 Agreement. Plaintiffs also filed seven (7) motions to strike statements and or exhibits submitted by Defendants in support of their amended motion to transfer.

### DISCUSSION

Upon review of the parties' arguments and the law, the Court finds there are five primary issues to be determined. The first issue is whether the forum selection clause is valid and enforceable as to those Plaintiffs that Defendants have submitted a signed 1998 Agreement. The second issue is, whether the forum selection clause is valid and enforceable as to those Plaintiffs that Defendants have not submitted a signed 1998 Agreement. The third issue is which Defendants are bound by the forum selection clause. The fourth issue is which of Plaintiffs' claims are subject to transfer. The final matter to be addressed is whether this case should be transferred pursuant to 28 U.S.C. § 1404(a) and which party bears the burden of proof. The Court will address each issue accordingly. However, at the outset the Court finds it necessary to address Plaintiffs' seven (7) motions to strike.

■ Plaintiffs move to strike the following:

1) Defendants' exhibits 1, 18, 19, 20, 21, and 22, on the grounds that they are unsworn, unauthenticated copies, they constitute inadmissible hearsay, are irrelevant, and fail to comply with Fed.R.Evid. 901.[6] (Pls.' Mot. To Strike Papers Attached as Exhibits 1, 18, 19, 20, 21, and 22 To the Memorandum In Support of Motion to Transfer, Doc. No. 233);

2) the August 2, 2002, declaration of Carl M. Casale, ("Casale") submitted in support of Defendants' renewed motion to transfer on the grounds that it is not based on personal knowledge, contains the conclusory statement that most of the employees and documents involved in the development of the technologies are in Missouri, and the statement is based on review of documents not in evidence as required by Fed.R.Civ.P. 56(e). (Pls.' Brief Supp. Of Renewed Motion to Strike the August, 2, 2002,

---

**6.** Exhibit 1 is a blank Monsanto Technology Agreement. Exhibit 18 is a 2001 Monsanto Technology Agreement signed by Tommy L. Heath in 2001 which contains the same forum selection clause, but includes additional terms and conditions not in the 1998 Agreement. Similarly, exhibit 19 is a 2001 Monsanto Technology Agreement signed by John C. Harrel. Exhibit 20 is a 1996 Monsanto Technology Agreement signed by Dean Stone and Laverne Stone which contains the forum selection clause, but is not exactly the same as the 1998 Agreement. Exhibit 21 is a 1997 Monsanto Technology Agreement which does not contain the forum selection clause on the back; it is blank. Exhibit 22 is a 2001 Monsanto Technology Agreement signed by Dean Stone.

declaration of Carl M. Casale, Doc. No. 346);

3) the statement in Defendants' brief that "a condition to the purchase and use of cottonseed containing Monsanto's patented gene technology is that the purchaser and user enter into a license agreement called the Technology Agreement." Plaintiffs argue this statement is unsupported by admissible evidence since Paragraph 5 of Rhylanders' declaration should be stricken. (Pls.' Mot. To Strike Statements Contained in Defs.' Amended Motions to Transfer, Doc. No. 239);

4) the statement in Paragraph 5 of Rhylanders September 23, 2002, declaration that "[a]ll individuals purchasing Roundup Ready cotton, Bollgard cotton, or Bollgard with Roundup Ready cotton in 1998 were required to execute the 1998 Monsanto Technology Agreement by personally signing the Agreement at the time of purchase." Plaintiffs argue that Rhylander lacks personal knowledge. (Pls.' Mot. To Strike Paragraph 5 of Rhylanders Statements Contained in Defs.' Amended Motion to Transfer, Doc. No. 241);

5) the papers attached as exhibits C, D, and E to Defendants' Response to Plaintiffs' Motion to Strike Paragraph 5 of Rhylander's declaration (Doc. No. 324) on the grounds that said documents are unauthenticated and constitute inadmissible hearsay. (Pls.' Mot. To Strike Papers Attached As Exhibits C, D, and E To Defs.' Resp. To Pls.' Motion To Strike Paragraph 5 of Rhylander' s Declaration, Doc No. 351). Exhibit C, D, and E

are photocopies of a warning label that Monsanto declares was required to be affixed to each bag of seed sold. The label states in relevant part that "[i]t is a violation under federal parent law to use this seed for any purpose without obtaining a license from Monsanto Co."

6) the March 7, 2003, affidavit of Rhylander attached as exhibit A to Defendants' Response to Plaintiffs' Motion to Strike Paragraph 5 of Rhylander's declaration. (Doc. No. 324) in its entirety for failure to comply with Fed.R.Civ.P. 56(e), and Rhylander's statement that:

It is a requirement imposed by Monsanto that all growers who wish to purchase and plant cottonseed containing Monsanto's patented technology must execute a Technology Agreement. This requirement has been in force since transgenic cotton was first commercially introduced in 1996; it was in force in 1998, and it remains in force today for all cottonseed containing transgenic traits patented by Monsanto ... Monsanto's requirement was communicated by Monsanto to cotton seed retailers prior to, during, and after 1998, by means of correspondence ....

(Pls.' Mot. To Strike The March 7, 2003, Declaration of Rhylander, Doc. No. 352).[7]

7) the February 27, 2003, affidavit of Ann Shackelford in its entirety for failure to satisfy Rule 56(e); specifically to include paragraphs 2, 3 and 4; which state, in relevant part, that on each bag of cottonseed sold by Delta Pine in 1998, with minor alterations

---

**7.** Exhibit A is a revised March 7, 2003, declaration of Rhylander submitted by Defendants' to clarify that Rhylander's September 23, 2002, declaration was not submitted to stand for the proposition that to his knowledge every grower did in fact sign an Agreement but that based on his personal knowledge it was a requirement imposed by Monsanto. (Defs.' Resp. To Pls.' Not. Of Objection To Rhylander Decl., Doc. No. 324).

each year, the statements identified in Defs.' exhibits C, D, and E, were printed. Plaintiffs argue the statements are hearsay and rely on documents not attached to the affidavit. (Pls.' Mot. To Strike the Feb. 7, 2003, Decl. Of Ann Shackelford and Brief In Supp., Doc. No. 353).

Upon review of the record and the parties' arguments, the Court finds that Plaintiffs' motions to strike should be denied. Federal Rule of Civil Procedure 12(f) sets forth the standard for filing motions to strike. "Upon motion made by a party before responding to a pleading, ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process. *See* 2A Moore's Federal Practice, P 12.21, p. 2419. Motions to strike are generally viewed with disfavor and " 'often considered time wasters.' " *See Tingley Systems Inc. v. Bay State HMO Management Inc.*, 833 F.Supp. 882, 884 (M.D.Fla.1993). Unless it is clear that the matters stricken have no possible relationship to the controversy and may prejudice the other party, motions to strike are usually denied. *See Augustus v. Board of Public Instruction*, 306 F.2d 862, 869 (5th Cir.1962); [8] *see also, Sun Insurance Company of New York v. Diversified Engineers, Inc.*, 240 F.Supp. 606, 612 (D.Mont.1965). In this circuit, the use of a rule 12(f) motion for the advancement of objections to an affidavit filed in support of a motion is generally considered improper. *See Smith v. Southeastern Stages, Inc.*, 479 F.Supp. 593, 594–5 (N.D.Ga.1977); *see also, Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 595 F.Supp. 1442, 1443 (N.D.Ga.1984)("[A]lthough state practice allows motions to strike affidavits ... this court does not entertain them."), *rev'd. on other grounds*, 788 F.2d 1500 (11th Cir. 1986). A motion to strike is only appropriately addressed toward matters contained in the pleadings. Affidavits submitted in support of a motion are clearly not within that category. *Id.* at 594; *see* Fed. R.Civ.P. 7. It is well established that "it is sufficient for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon [the] objections in its consideration of the motion." *Id.* at 595; *Friedlander*, 595 F.Supp. at 1442; *see also, Newsome v. Webster*, 843 F.Supp. 1460, 1464 (S.D.Ga.1994).

Based on the foregoing applicable law, the Court first finds that Plaintiffs' motions to strike the exhibits and affidavits filed in support of Defendants' motions to transfer are improper. Plaintiffs' seven (7) motions to strike do not address matters contained in the pleadings. Pleadings are identified as complaints, answers, and replies to counterclaims. *See* Fed. R.Civ.P. 7(a). As noted above, to voice their objections to the material submitted by Defendants, the proper procedure is for the Plaintiffs to file material controverting the affidavits, exhibits or statements submitted by the Defendants and the Court would give the materials appropriate consideration and weight in light of Plaintiffs' objections.[9] While it is true

---

8. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9. The Court notes that Defendants appropriately pointed out inconsistencies in the declarations of the Plaintiffs submitted in opposition to their motion for summary judgment in

that affidavits filed in opposition to a motion for summary judgment are subject to a motion to strike for failure to comply with the requirements of Fed.R.Civ.P. 56(e), the substantive motion before the Court is not a summary judgment motion.[10] "Section 1404(a) does not expressly require that an affidavit submitted in support of a transfer motion be based on personal knowledge as Federal Rule of Civil Procedure 56(e) does in regard to summary judgment motions." *Tingley Systems, Inc. v. Bay State HMO Management, Inc.*, 833 F.Supp. 882, 884 (M.D.Fla. 1993). Similarly, section 1404(a) does not require that affidavits set forth facts as would be admissible into evidence at trial or in connection with a dispositive motion. *See* 28 U.S.C. 1404(a), but *cf.*, Fed.R.Civ.P. 56(e).[11] Federal Rule of Evidence 901(a) provides that the requirement of authenticity or identification, as opposed to admissibility, is met "by evidence sufficient to support a finding that the matter in question is what its proponent claims." *U.S. v. Caldwell*, 776 F.2d 989, 1001–1002 (11th Cir.1985). The Court is satisfied that the exhibits submitted by Defendants are what they purport to be. More important, Plaintiffs have not presented evidence sufficient to raise a question as to the authenticity, reliability or relevance of the submissions. The Court notes that Plaintiffs do not specifically contend that exhibits 18, 19, 20, 21, and 22 are anything other than what they purport to be. Plaintiffs do not respond to Defendants' assertion that exhibits 18–22 are copies of the original documents produced to Plaintiffs' counsel. David Marshall, for inspection at Monsanto's facilities on December 17, 2002. (Defs.' Resp. To Pls.' Mot. To Strike Exs.' 1 and 18–22, Attached Exs. A–D, Doc. No. 323). Furthermore, the Court is satisfied that each affiant is competent to testify as to the matters asserted and their assertions are based on personal knowledge. Each affiant avers that the statements contained therein are based on personal knowledge. Casal, as the Vice President of North Ag of Monsanto Company and the person responsible for overseeing Monsanto's agricultural business including development, testing, and marketing, is competent to testify as to where its employees are located. Rhy-

their briefs which will be discussed henceforth.

**10.** *See Auto Drive–Away Co. of Hialeah, Inc. v. I.C.C.*, 360 F.2d 446, 449 (5th Cir.1966)(finding that affidavits submitted in support of a motion for summary judgment that do not measure up to the standards of Rule 56(e) are subject to a timely motion to strike); *Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998); *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 684–685 (M.D.Fla.1999); *Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1334 (M.D.Ala. 1998).

**11.** In *Tingley*, the plaintiff argued that the Fed.R.Civ.P. 56(e) requirement that affidavits submitted in support of a motion for summary judgment be based on personal knowledge should apply to the defendant's affidavits submitted in support of its motion to transfer.

*Tingley*, 833 F.Supp. at 884. The court disagreed reasoning that Rule 56(e) contained strict statutory requirements whereas Rule 1404(a) did not. The Court notes that motions to transfer involve questions of law wherein the court is the trier of fact and would not be the proper subject of a Rule 56 summary judgment motion. A Rule 56 summary judgment motion primarily seeks to determine which matters remain, if any, for a trial. In that context, the requirement of admissibility is a strict one. However, on a motion to transfer the Court is concerned that the evidence submitted in support or against transfer is what it purports to be, is relevant, and has some indicia of reliability. Any inconsistencies in the declarations submitted should be pointed out to the Court for its consideration when weighing the evidence. Some of the material submitted by Defendants is relevant to the court's consideration of the issues presented herein.

lander, as an employee of Monsanto for twenty—six (26) years and Director of Marketing for the Southern Region is competent to testify as to Monsanto's alleged requirements for consumers to purchase cottonseed containing Monsanto's technology. Similarly, declarant Shackelford has worked for Defendant Delta and Pine Land Company for eight (8) years and is Vice President of Corporate Services and is competent to testify as to the matters asserted. Although the affiants do not submit the documents they may have relied upon as a basis for their knowledge, the Court finds that the evidence in this case, including deposition testimony, speaks for itself for the purpose of considering the motion to transfer. The record is clear that at least fifteen (15) Plaintiffs signed the 1998 Agreement containing the forum selection clause. Plaintiffs have not shown how they are prejudiced by the statements or exhibits submitted by the Defendants. The Court will, therefore, consider the matters presented, giving them the appropriate weight and consideration they deserve in deciding the main issue before the Court: whether this action should be transferred to the United States District Court for the Eastern District of Missouri. Accordingly, the Court finds that Plaintiffs' motions to strike (Doc. Nos. 233, 238, 239, 241, 351, 352, and 353) should be, and hereby are, **DENIED**.

**1. *The Validity and Enforceability of the Forum Selection Clause As To Those Plaintiffs Which Defendants Have Submitted A Signed 1998 Agreement***

The first issue before the Court is whether the 1998 Agreement containing the forum selection clause is valid and enforceable as to those Plaintiffs in which Defendants have submitted a signed Agreement. Defendants argue that the forum selection clause is valid and reasonable and Plaintiffs bear the burden of establishing a ground for avoiding the forum selection clause. (Defs.' Amend. Mot. To Transfer at pp. 7–9)(*citing M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989)). Defendants argue that Monsanto is headquartered in Missouri and the employees involved in developing the Roundup Ready and Bollgard technologies at issue, and the documents relevant thereto, are predominately located in St. Louis, Missouri. (Defs.' Amend. Mot. To Transfer at pp. 6–7; August 2, 2002, Casale Decl., Defs.' Ex. 23 ¶ 3).[12] Second, Defendants contend the Plaintiffs had valid notice of the forum selection clause and cite to three other federal courts rulings in support of its position. (*Id.* at 8–11)(*citing Monsanto Company v. McFarling,* 302 F.3d 1291 (Fed.Cir.2002); *Massey v. Monsanto Company,* No. 2:99–cv–218, 2000 WL 1146705 (N.D.Miss. June 13, 2000), and *Blades v. Monsanto Company,* No. 00–cv–4034–DRH (S.D.Ill. Jan. 3, 2001)(attached as Defs.' Exs. 24, 35, and 26)). Defendants further argue that the Plaintiffs' testimony shows that no one prevented them from reading the 1998 Agreements or misled them about the terms of the Agreement, and the Plaintiffs had a choice as to whether to buy the cottonseed in question. (Defs.'s Mot. To Transfer at pp. 6–11).

Plaintiffs contend that due to lack of notice, the forum selection clause is unenforceable. Plaintiffs argue that the Plaintiffs with the signed 1998 Agreements did

---

**12.** The Court notes that during oral argument Plaintiffs conceded that although this statement was the subject of a motion to strike it was supported by the deposition testimony of Green.

not receive notice of the existence of the forum selection clause in the form adhesion contract prior to execution, they did not know the forum selection clause existed, they were not presented with the first two pages of the Agreement attached as exhibit 1, and they did not negotiate with anyone concerning the terms of the Agreement. (Pls.' Brief Opp. To Defs.' Mot. To Transfer pp. 7–8, Doc. No. 230)(citing *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7 (2nd Cir.1995); *Ward v. Cross Sound Ferry*, 273 F.3d 520 (2nd Cir.2001)). Plaintiffs argue the forum selection clause is in approximately 7–point, unbolded, single-spaced type font and is the third to last of approximately 24 paragraphs, on the bottom back side of the signature page of the form Agreement.

■ Upon review of the record, the parties' arguments and relevant case law, the Court finds the forum selection clause contained in the 1998 Agreement is valid and enforceable. The determination of whether to enforce a forum selection clause in a diversity action is governed by federal law. *See Stewart Organization, Inc., v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988). The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. *See P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir.2003). In *The Bremen*, the Supreme Court of the United States established the principle that absent fraud, undue influence, or overweening bargaining power, a freely negotiated

agreement that contains a forum selection clause should be given full effect. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972).[13] A forum selection clause is enforceable unless the party challenging it clearly demonstrates that it is invalid or that enforcement would be unreasonable and unjust. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(noting that the enforcement of freely negotiated forum selection provisions "does not offend due process" when the provisions are neither unreasonable nor unjust).

■ Plaintiffs do not challenge the validity of the forum selection clause on the grounds of fraud or overreaching, but assert that they did not have notice of the clause and it is a contract of adhesion. However, it is well established under Georgia contract law and Missouri law, if a party signs a paper, the presumption of law is that he knows the contract, and has notice of the facts recited in it. *See Cotton States Life Ins. Co. v. Scurry*, 1873 WL 2671, *3 (Ga.1873); *Binkley v. Palmer*, 10 S.W.3d 166, 171 (Mo.Ct.App.1999)("It has long been settled that absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs.").[14] Fifteen (15) Plaintiffs' signatures appear on the front of the 1998 Agreement below the statement "I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them."

---

**13.** Although the Court's opinion in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), involved a Federal District Court sitting in admiralty, the justifications noted in *The Bremen* to counter the historical disfavor that forum-selection clauses had received in American courts applies to guide the district court's analysis under § 1404(a). *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22,

33, 108 S.Ct. 2239, 2245—2246, 101 L.Ed.2d 22 (1988)(Kennedy, J. and O'Connor, J. concurring).

**14.** Although the parties do not raise any choice of law issues, the Court notes the fourteen (14) signed Agreements contain Missouri choice of law provisions which are not at issue here.

(*See* Defs.' Exs. 3–17). The 1998 Agreement is only one page and the forum selection clause is the only provision printed in all capital letters. Thus, the Court finds the Plaintiffs had notice of the forum selection clause. Furthermore, the Court finds that Plaintiffs have failed to show a disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause. The evidence shows that the Plaintiffs were not required to purchase the 1998 DP/Paymaster cottonseed and some had planted a percentage of cottonseed in 1998 that did not contain the Monsanto technology. Moreover, Plaintiffs do not assert that they are anything other than professional seasoned farmers. Two of the Plaintiffs, Tunaep Farms, Inc., and Pinegreen, Inc., are corporations engaged in the business of farming. The Court agrees with those courts that have found the 1998 Monsanto Technology Agreement and the terms contained therein valid and enforceable. *See Monsanto Company v. McFarling*, 302 F.3d 1291 (Fed.Cir.2002)(upholding the district court's finding that the 1998 Technology Agreement was valid and enforceable although plaintiff argued he did not have notice of the terms because he did not read the back.); *Massey v. Monsanto Company*, No. 2:99–cv–218, 2000 WL 1146705 (N.D.Miss. June 13, 2000)(finding Monsanto' s Technology Agreement was not an adhesion contract since plaintiff had the opportunity to purchase other soybean seed varieties on the marker; plaintiff was not the weaker party with no bargaining power and the forum selection clause was not obscure); *Blades v. Monsanto Company*, No. 00–cv–4034–DRH, 2001 WL 775980 (S.D.Ill. Jan. 3, 2001)(noting that plaintiffs merely argued the Technology Agreement was a contract of adhesion, but the forum selection clause was legible, printed in all capital letters, and was not buried in the middle of a paragraph). The Court further finds that it is not unreasonable or unjust to enforce the forum selection clause since Monsanto's principal place of business and headquarters are located in St. Louis, Missouri, which is located in the Eastern District of Missouri. *See P & S Business*, 331 F.3d 804 (11th Cir.2003)(finding the choice of a California venue reasonable when the corporation's principle place of business and headquarters were located in California). Plaintiffs have not shown or argued that enforcing the forum selection clause would actually deprive them of their fair day in court. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590–95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *see also McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 346 (8th Cir.1985). Litigants are not necessarily deprived of their day in court because they have to use deposition testimony rather than live testimony in a trial. The use of deposition testimony for some witnesses in the event of trial is sometimes more cost effective and regularly used. Scheduling of the trial could be arranged around the farming season if necessary as noted by the Defendants. Therefore, the Court concludes that the forum selection clause is valid and enforceable as to the fifteen (15) Plaintiffs that Defendants submit signed 1998 Agreements for the purpose of transfer: Crosby, Oliver, Prince, Byrd, Perkins, Alvin Heath, Braswell, Thompson, James Rushing, Jr., James Rushing, Paulk, Pryor, Pinegreen, Inc., McNair and Tunaep Farms.

**2. The Validity and Enforceability of the Forum Selection Clause As To Those Plaintiffs That Defendants Do Not Submit A Signed Agreement**

■ Plaintiffs argue that the Plaintiffs for whom there is no signed Agreement did not receive notice of the forum selection clause and thus it is unenforceable. (Pls.' Brief Opp. To Defs.' Mot. To Transfer at 7–8, Doc. No. 230). As to Tommy

Heath, Defendants argue that since Tommy Heath and Alvin Heath share a farming operation they do not assert separate claims and Tommy Heath is bound by the 1998 Agreement signed by Alvin Heath. (Def.s Reply at 4, Doc. No. 320).

Upon review, the Court finds that Tommy Heath is bound by the forum selection clause in the 1998 Agreement. A non-party to a forum selection clause is bound if the party is 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound. *See Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998)(quotations in original). The *Lipcon* court found that appellants, Charles and Barbara Lipcon, who signed letters of credit to provide collateral for their spouses but did not sign the international agreement containing the forum selection clause were bound by it. Here, Tommy L. Heath and Alvin Heath jointly operate the Heath farm; therefore, it is certainly foreseeable that either or both would be bound by a contract that the other signed. Furthermore, Plaintiffs' Complaint states that "Plaintiffs Tommy L. Heath and Alvin Heath are residents of Emanuel County, Georgia. At all times pertinent hereto, Plaintiffs were in the business of, among other things, growing cotton on a commercial basis for profit ..." (Compl.¶ 9, Doc. No. 1). Plaintiffs' Complaint further asserts one claim on behalf of both Plaintiffs. "Plaintiffs Tommy L. Heath and Alvin Heath purchased 2,250 pounds of the following varieties of the Cottonseed from Defendants at some point after approximately May 20, 1998: PM1220BRRR2." (Compl.¶ 46(i)). Plaintiffs assert that "Tommy L. Heath and Alvin Heath suffered a diminished yield of approximately 300 pounds of lint and 420

pounds of cottonseed per acre on the 249 acres Plaintiff planted with the 1998 DP/Paymaster Cottonseed." (Compl.¶ 52(i). Assuming Plaintiffs' allegations to be true, the Heath Plaintiffs assert one claim based on the acres planted with the 1998 DP/Paymaster Cottonseed. Therefore, it is just to charge both parties with notice of the forum selection clause in the 1998 Agreement signed by Alvin Heath. As noted by Defendants, the Heaths also responded jointly to discovery.[15] Thus, the Court finds the forum selection clause in the 1998 Agreement is valid and enforceable as to Tommy Heath.

Similarly, based on allegations in Plaintiffs' Complaint and the fact that Dean Stone and Laverne Stone have responded jointly to discovery, the Court finds they assert one claim. (See Compl., ¶ 12, 46($l$), 47($l$), 52($l$), 46($l$), 47($l$), 52($l$)). However, the Court does not conclude that the 1998 Agreement is valid and enforceable as to the Stones. Defendants do not submit a valid 1998 Agreement signed by either Dean Stone or Laverne Stone. Laverne Stone denies that she ever executed a 1998 Agreement. (Laverne Decl., ¶ 10, Attached To Laverne Stone Depo.). Dean Stone responded that he could neither admit nor deny that he signed a 1998 Agreement. He testified that he did not recall receiving any papers that he was supposed to sign in connection with the 1998 cottonseed purchase. (Dean Stone Depo. p. 24.). Defendants state that the Stones did not enter into a written Technology Agreement in 1998, (Defs.' Brief Supp. Amend. Mot. To Transf. at 3, Doc. No. 100), but assert that since they testified that they were aware they were operating pursuant to an Agreement with Monsanto governing the purchase of seed for their 1998 crop

**15.** The Court notes that Plaintiffs implicitly conceded that Tommy L. Heath was bound by the 1998 Agreement. The illustration used by Plaintiffs during oral argument indicate a signed agreement by Tommy L. Heath and a dispute as to Plaintiffs John Harrel, Martin Stone, Dean Stone and Laverne Stone only.

they should be bound by the forum selection clause. (Defs.' Reply In Supp. Of Amend. Mot. To Transf. at 5, Doc. No. 320). The Court disagrees. Defendants are seeking to enforce a specific provision, in a specific contract, for the purpose of denying the Stones their chosen forum; a contract which the Court notes should be a part of the Defendants' business records and contain a valid signature.[16] Defendants can not claim the Stones had constructive notice of the forum selection clause contained in the 1998 Agreement by virtue of their signatures on the contract as with the other fifteen (15) Plaintiffs. Defendants do not suggest and there is nothing in the record to support a finding that Dean Stone or Laverne Stone had actual knowledge of the forum selection clause contained in the 1998 Agreement. The agreements signed by Dean Stone for the 1996, 1997, and 2001 crop year do not convince the Court otherwise. First, they are signed agreements for years other than the one in question. Second, all three agreements are different in form, substance and structure. For example, the 1997 agreement as submitted, exhibit 21, is a single sheet with nothing on the back and does not include the forum selection clause. The 2001 agreement, exhibit 22, contains a binding arbitration clause and limited warranty provisions which are not in the 1998 Agreements signed by the other Plaintiffs. Moreover, despite Defendants' assertion that all consumers were required to sign the 1998 Agreement, Defendants do not dispute that at least one

Plaintiff, John Harrel, did not sign a 1998 Agreement. Therefore, since Defendants have failed to produce a valid 1998 Agreement signed by Dean Stone or Laverne Stone, there is nothing in the record to suggest they had notice of the forum selection clause. Thus, it would be unreasonable and unjust to enforce the forum selection clause as to these two Plaintiffs based on the 1998 Agreement. Therefore, the Court finds that Dean Stone and Laverne Stone are not contractually bound by the forum selection clause for the purpose of considering whether to transfer said action pursuant to 28 U.S.C. § 1404(a).

In addition, the Court finds that John Harrel is not contractually bound by the forum selection clause for the purpose of considering whether to transfer said action pursuant to 28 U.S.C. § 1404(a). Defendants do not submit a signed 1998 Agreement by John Harrel. When asked whether he executed a 1998 Monsanto Technology Agreement, Harrel testified, "Not to my knowledge I did not. I was never offered one to do... Somehow I just fell through the cracks and nobody ever asked." (Harrel Depo. p. 35, 36). When asked if he was familiar with what a 1998 Monsanto Technology is, Harrel testified, "I may be now, but I did not then. I am now because we fill out one when we buy the cotton seed." (Harrel Depo. p. 35). Thus, the Court finds that Harrel did not have notice of the forum selection clause and it would be unjust and unreasonable to determine that he was contractually bound by it.[17]

---

**16.** The Court notes that the record contains a 1998 Agreement purportedly signed by Defendant Dean Stone. He denies that it is his signature on the page and there is a "gm" next to the signature which could mean someone else signed the agreement. (*See* Dean Depo., Def's. Ex. 59). Defendants do not argue otherwise; therefore, the Court construes the record as not containing a valid, signed 1998 Agreement for Dean Stone. The Court notes that plaintiffs in other cases in-

volving Monsanto have alleged fraud with regard to their signatures on Monsanto's Technology Agreements, but no such allegation is before this Court with regard to any of the Plaintiffs. (*See* Def.'s Ex. 25, case of *Rudolph Massey v. Monsanto Company*, No. 2:99–cv–218 (N.D. Miss. June 13, 2000)).

**17.** During oral argument Defendant Delta Pine argued the forum selection clause should be enforced as to Plaintiff Harrel because if

■ As to Defendant Martin Stone, however, the Court finds otherwise. Defendants do not submit a signed 1998 Agreement by Martin Stone, but show that he testified in depositions that he executed an agreement in 1997 regarding his 1998 crop.

Q. Mr. Stone, did you make the decision at some point to purchase cottonseed in 1998 containing Monsanto Technology.

A. I must have made it in 97 by signing that agreement that day, I think.

Q. So you did sign an agreement, Mr. Stone?

A. Yeah, we signed an agreement that day in December.... Best I remember it was just a single paper, but I don't know whether there were three copies. Anyway, I got a carbon copy ... and I looked for it [and can't find it].

Q. So were you told, just to clarify, that you had to sign this agreement in December 97' if you wanted to purchase cottonseed containing Monsanto's technology?

A. To get their seed, you had to sign an agreement with them.

Q. And you signed the agreement in 1997, in December 1997; is that correct?

A. Right.

Q. And was that in advance of your purchase of seed for your 1998 crop?

A. Right.

(*See* Martin Stone Depo. pp. 23, 24, 26, and 43, Defs.' Amend. Mot. To Transfer at 4, Ex. 46).[18] Unlike Dean Stone and John Harrel, Martin Stone testified that he remembered signing an agreement in 1997 before purchasing his 1998 crop. Notably, when asked if he had read the technology agreement when he signed it, Mr. Stone answered, "Yeah." (Martin Stone Depo. p. 41). The evidence shows that fourteen (14) Plaintiffs were required to sign the 1998 Agreement prior to purchasing their 1998 crop and it contained the forum selection clause at issue. The Court finds the evidence in the record sufficient to show that Martin Stone signed a 1998 Agreement and had notice of the forum selection clause; he simply can't find it. Therefore, the Court finds that it would be just and reasonable to enforce the forum selection clause as to Martin Stone. For the purpose of Defendants' motion to transfer only, the Court concludes that Martin Stone signed a 1998 Agreement and had notice of the forum selection clause and should be bound thereby.[19]

In sum, the Court finds that Defendants have shown that the 1998 Agreement is valid and enforceable as to seventeen (17) Plaintiffs. Three (3) Plaintiffs are not bound by the forum selection clause: John Harrel, Dean Stone and Laverne Stone.[20]

---

he got the seed without a license from Monsanto then he infringed Monsanto's patent and this Court should not countenance such behavior. The Court concludes that whether Harrel violated Monsanto's patent is a question not before the Court and Defendants have other avenues of pursuing a remedy for a patent infringement claims, if there is one.

18. The Court notes that the record contains a 1998 Agreement purportedly signed by Defendant Martin Stone but he denies that it is his signature on the page. (*See* Def's. exhibit 65, Attached to Martin Stone Depo.). Defendants

do not argue otherwise; therefore, the Court construes the record as not containing a valid, signed 1998 Agreement for Martin Stone.

19. This was a close question for the Court; however, the Court concludes that enforcement of the forum selection clause as to Martin Stone is supported by the weight of available evidence and it is not outcome determinative as to the main issue before the Court.

20. The Court notes that although Plaintiffs assert one claim they are still considered sep-

### 3. *Which Defendants Are Bound By the Forum Selection Clause*

█ Plaintiffs argue, without citation to any legal authority, that Defendant Pharmacia has no present rights in the fourteen (14) Agreements because Defendants state in footnote 1 of their brief that on September 1, 2000, pursuant to a merger agreement between Pharmacia & UpJohn, the assets and liabilities of the agricultural business were transferred from Pharmacia to new Monsanto.[21] Further, Plaintiffs argue without citation to any legal authority, that Monsanto has no present rights in the Agreements because based on its interpretation of Delta and Pine's SEC filings any rights Monsanto may have had in the Agreements were transferred to D & M Partners. (Pls.' Brief Opp. To Mot. To Transf. at 6–7). D & M is not a party to this lawsuit. Plaintiffs also contend that Delta Pine is not a party to the Agreement and can not enforce the forum selection clause. Defendants argue to the contrary.

Upon review, the Court finds that the real question is not whether the Defendants have a present interest in the 1998 Agreement that is enforceable; rather, the issue is which Defendants are bound by the forum selection clause. An agreement containing a forum selection clause is both an asset and a liability depending on the parties' preferred choice of forum. Plaintiffs have not provided the Court with any legal authority to support its position that neither Monsanto, not its successor by merger, Pharmacia, named Defendants in this case whom Plaintiffs seek to hold liable for claims arising from their purchase of the 1998 DP/Paymasters cottonseed, have the right to enforce the forum selection clause contained in the 1998 Agreement signed by a majority of the Plaintiffs.

Based on Plaintiffs' argument, it would appear that the 1998 Agreement and the terms and conditions contained therein are no longer valid because of the merger and agreements that took place between the Defendants and others after the 1998 Agreement was signed and after this law suit was filed. The Court concludes that Monsanto, the actual party to the 1998 Agreement, and Pharmacia, as its successor by merger, are entitled to enforce the forum selection clause.

█ Likewise, the Court concludes that Defendant Delta Pine is bound by the forum selection clause although it is not technically a party to the agreement between Monsanto and the Plaintiffs. "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Lipcon*, 148 F.3d 1285, 1299 (11th Cir.1998)(quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993)) (quoting *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988)("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.")). Delta Pine produced and sold Plaintiffs the 1998/DP Paymaster cottonseed which contained the patented gene technology of Monsanto; therefore, it is closely related to the dispute giving rise to Plaintiffs' claims and it was 'foreseeable' that it would be bound by the forum selection clause. Plaintiffs' allegations against Monsanto and Delta Pine are inextricably intertwined with those asserted against Monsanto as evidenced by the allegations contained in Plaintiffs' Complaint which link all Defendants together. (*See* Compl. ¶¶ 59, 63, 64, 66, 67, 68, 69, 70, 76, 80).

---

arate Plaintiffs for the purpose of this lawsuit and determining whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a).

**21.** There is a dispute as to whether Pharmacia is a proper party to this lawsuit, but it is not a matter properly before the Court for consideration.

Moreover, Delta Pine does not argue otherwise. (Defs.' Delta Pine Joinder In Mot. To Transf. at 2–12, Doc. No. 105). The Court notes that this is not a case where Delta Pine is seeking to enforce the forum selection clause and Monsanto, the party to the 1998 Agreement, is not a Defendant in the lawsuit. Based on the foregoing, the Court concludes that Monsanto, Pharmacia and Delta Pine are bound by the forum selection clause. Further, neither party objects to its enforcement, but join in the motion to transfer.

### 4. *Which Of Plaintiffs' Claims Are Subject To Transfer Pursuant to the Forum Selection Clause*

Defendants argue the forum selection clause is broad enough to require transfer of all of the Plaintiff's claims, including their claims arising in tort, against any and all Defendants, since it applies to "all disputes arising under [the] Agreement." (Defs.' Amend. Mot. To Transfer pp. 11–12)(*citing Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987)). Delta Pine argues that it is entitled to enforce the forum selection clause and it applies equally to any and all claims Plaintiffs assert against it and not just the claims against Monsanto and Pharmacia. (Delta Pine's Joinder in Amend. Mot. To Transf., Doc. No. 105)(citing *Lipcon*, 148 F.3d 1285 (11th Cir.1998)).

Plaintiffs contend that when construing the contract language against the drafter, their tort claims for negligence, negligent misrepresentation and fraudulent concealment related to the cottonseed do not arise under the 1998 Agreement. Further, Plaintiffs argue that their tort claims against Delta Pine do not arise under the Monsanto Agreement since they arise from Delta Pine's concealment which is separate and apart from the Agreement.

Upon review of the record, the parties' argument and applicable case law, the Court finds that all of Plaintiffs' claims are subject to transfer, including those rising in tort, and the claims against Delta Pine. Whether tort claims are governed by forum selection provisions depends upon the intention of the parties as reflected by the wording of particular clauses and the facts of each case. *See Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 695 (8th Cir.1997)(discussing the scope of various forum selection clauses)(quotations omitted)). In *Stewart Organization, Inc. v. Ricoh Corp.* 810 F.2d 1066, 1070 (11th Cir.1987), the United States Court of Appeals for the Eleventh Circuit held that a contract referring to "*any* case or controversy arising under or in connection with this Agreement" included all causes of action arising directly or indirectly from the business relationship evidenced by the contract, including those claims arising in tort. (quotations and emphasis in original). The Stewart court reasoned that:

> This principle is sound because it promotes a more orderly and efficient disposition of the case in accordance with the parties' intent. This is consistent with the Supreme Court's directive in *The Bremen* to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements. Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law.

*Id.* at 1070.

Similarly, the Court finds that the contract term in the 1998 Agreement stating that this agreement governs "*all* disputes arising under this agreement" is sufficiently broad to include Plaintiffs claims arising in tort.[22] Furthermore, the Court

---

**22.** Plaintiffs cite the case of *Southern Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010 (D.Ariz.2001), for the proposition that its tort claims are not subject to transfer pur-

agrees with Defendants that Plaintiffs' tort claims arise under this 1998 Agreement since all of Plaintiffs' claims arise from purchasing and planting the cotton seed. (Def. Delta Pine's Joinder in Amend. Mot. And Brief In Supp. Thereof at 2, Doc. No. 105). Plaintiffs' Complaint alleges that "the product which is the subject of Plaintiffs' claims is cottonseed produced, supported, marketed and sold by Defendants under various agreements well known to Defendants, but not yet in possession of Plaintiffs." (Compl.¶ 27). The 1998 Agreement also states the terms and conditions of using the 1998/DP Paymaster which may be a part of the Defendants' defense to the claims raised by Plaintiffs. (*See* Defs.'s Exs. 3–17). Moreover, to transfer Plaintiffs' breach of implied warranty of merchantability claim but not Plaintiffs' claims for negligence, negligent misrepresentation and fraudulent concealment would neither promote justice nor would it be an efficient use of resources. The claims would still be subject to transfer in the interest of justice.

The case of *S–Fer Intern., Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. 211, 214 (S.D.N.Y.,1995), cited by Plaintiffs does not persuade the Court otherwise. In *S–Fer Intern.*, the court recognized that the forum selection phrase at issue—"enforcement of any obligation contained herein" was a limited forum selection clause unlike the broad phrases considered by other courts. *S–Fer Intern.*, 906 F.Supp. at 214 (discussing other broad forum selection clauses). Thus, the court held that plaintiff's' claims which were based in tort and sought rescission of the lease based on fraud in the inducement were not claims for enforcement of any obligations under

the lease encompassed by the forum selection clause. Unlike in *S–Fer Intern*, the forum selection clause used here is not narrow, but expansive in that it covers "*all* disputes *arising from* this Agreement." The majority of the Plaintiffs signed the 1998 Agreement and their claims arise from their purchase of the 1998/DP Paymaster cottonseed pursuant to the agreement. Therefore, the Court concludes that all of Plaintiffs claims including their claims for negligence, negligent misrepresentation and fraudulent concealment against all Defendants are subject to transfer pursuant to the forum selection clause.

### 5. *Transfer Pursuant to 28 U.S.C. § 1404(b)*

■ Federal Rule of Civil Procedure 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> The statute is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) calls on the district court to weigh in the balance a number of case— specific factors, ... [a] forum-selection clause should receive neither dispositive consideration nor no consideration ....

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S.Ct. 2239, 2239, 101 L.Ed.2d 22 (1988); *see also, Van Dusen v.*

---

suant to a forum selection clause. However, the case cited does not stand for that proposition. In *Southern Union*, the court did state that "ordinarily, tort claims are not governed by a forum selection clause, *Id.* at 1028, but the issue argued by the parties was what

choice of law principles to apply to the fraudulent inducement claim in deciding the merits of the claim." Here, the issue is whether Plaintiffs claims arise under the agreement such that they can be transferred pursuant to the valid forum selection clause.

*Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 808, 11 L.Ed.2d 945 (1964). The standard for transfer under 1404(a) gives broad discretion to the trial court, which will only be overturned for abuse of discretion. *See Brown v. Conn. Gen. Life Ins. Co.,* 934 F.2d 1193, 1197 (11th Cir.1991).

▇ Before considering the factors justifying a transfer, the threshold inquiry is twofold. The initial question is whether venue is proper in the district in which the action is actually brought. *See U.S. Fidelity and Guaranty Co. v. Mayberry, et. al.,* 789 F.Supp. 901 (E.D.Tenn.1992). The second inquiry is whether the transferee state is a venue where the action could have been brought. *See Mason v. Smithkline Beecham Clinical Lab.,* 146 F.Supp.2d 1355 (S.D.Fla.2001). Section 28 U.S.C. § 1391(a) provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same state,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...., or

(3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

▇ The parties do not dispute that venue is proper in the Middle District of Georgia since a substantial part of the events or omissions giving rise to the claim occurred in Georgia. (Compl., Doc. No. 1). As to the second inquiry, a court addressing the enforceability of a forum selection clause is considering whether it must, *in its discretion, decline* jurisdiction and defer to the selected forum. *See Lambert v.*

*Kysar,* 983 F.2d 1110, 1119 (1st Cir.1993)(emphasis in original). The valid forum selection clause in this case establishes that this is a case that might have been brought in the United States District Court for the Eastern District of Missouri. *See Cinram, Inc. v. Worldwide Entertainment Group,* LLC 2000 WL 1124591, *3 (S.D.Ind.2000)(finding that when a valid forum selection clause exists, personal jurisdiction and venue challenges are waived).

Under Section 1404(a), the court should consider: 1) convenience of the parties; 2) convenience of the witnesses; and 3) the interest of justice. The choice of forum clause is "a *significant* factor that figures *centrally* in the district court's calculus." *P & S Business Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807 (11th Cir.2003)(quoting *Stewart Org., Inc.,* 487 U.S. at 29, 108 S.Ct. 2239, 101 L.Ed.2d 22) (emphasis added). "Thus, while other factors might 'conceivably' militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *Id.* (quoting *In re Ricoh Corp.,* 870 F.2d at 573). Normally a plaintiff's choice of forum is entitled to much deference and the party seeking transfer hears the burden of establishing that the plaintiff's chosen forum is less convenient. However, the Eleventh Circuit has held that "when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *Id.* at 573. The *Ricoh* court reasoned that by enforcing the contractual forum, the court is not attempting to limit the plaintiff's usual right to choose, but is enforcing the forum the plaintiff has already chosen. *Id.* In this case, where the record shows that some of the Plaintiffs are not bound by the forum

selection clause, the Court finds that those Plaintiffs are bound by their choice to bring suit in concert with others that are. Section 1404(a) provides for transfer of *"any civil action"* and not individual claims. *See Technosteel, LLC v. Beers Const. Co.*, 271 F.3d 151, 157 (4th Cir.2001) ("courts have adhered to the general rule that § 1404 transfer 'contemplates a plenary transfer of the entire case' "); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir.1991) (same) (citing *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir.1968)); *Mylan Pharmaceuticals Inc. v. American Safety Razor Co.*, 265 F.Supp.2d 635, 640 (N.D.W.Va.2002)("[s]ection 1404(a) only authorizes the transfer of an entire action, not individual claims."). The fact that other plaintiffs or parties in the lawsuit are not bound by the forum selection clause is certainly a factor that militates against a transfer that must be considered under the individualized case-by-case basis on a motion to transfer.

However, the burden of proof on the issue of transfer pursuant to a forum selection clause, in a single civil action, should not be on the Plaintiffs as to those plaintiffs with a valid forum selection clause and on the Defendants as to those Plaintiffs without a valid forum selection clause as proposed by Plaintiffs. That is not a reasonable way for district courts to handle motions to transfer or the record in such cases. The decision to transfer is based on the record as a whole not as to each party, although the relevant circumstances of each party plays a part in each case if presented to the court. Therefore, although Plaintiffs argue that the Defendants bear the burden of establishing that transfer is appropriate as to the Plaintiffs not bound by the forum selection clause, and Plaintiffs bear the burden as to those Plaintiffs with a valid forum selection clause, the Court finds otherwise. The burden is on the party opposing the enforcement of the forum selection clause. *See In re Ricoh Corp.*, 870 F.2d at 573 (11th Cir.1989). Applying the aforementioned burden of proof to the facts of this case, the Court finds that Defendants' motion to transfer should be granted.

### A. *Convenience of the Parties*

 Plaintiffs argue that all twenty (20) Plaintiffs will be seriously inconvenienced by litigating their claims in the Eastern District of Missouri. (Plaintiffs' Decls.' ¶ 9). Plaintiffs assert that by contrast there is no evidence that the Defendants will be inconvenienced. Specifically, Plaintiff's point out Defendants' revenue as evidenced by their SEC filings and that Defendants affidavits do not suggest that they will be inconvenienced.

Defendants contend that the convenience of the parties weighs in favor of Missouri. Defendants argue that by signing the 1998 Agreement with the forum selection clause, Plaintiffs have waived any objection they have to resolving disputes in Missouri. Further, Defendants assert that Monsanto's headquarters are in St. Louis, Missouri and Monsanto's personnel who have knowledge about the Roundup Ready and Bollgard technologies work at Monsanto's facilities in or around St. Louis, Missouri.

Upon review of the record, the Court finds that the convenience of the parties is fairly evenly balanced. Defendant Monsanto has shown that the Missouri forum is not unreasonable since its headquarters and the employees involved in the testing of the Roundup are located there. Defendant Delta joins in Monsanto's motion to transfer and does not oppose litigating this action in the Eastern District of Missouri on the grounds of inconvenience. Monsanto's financial status is not a sufficient basis alone for invalidating a valid forum selection clause. *See P & S Business*, 331 F.3d

at 807(citing *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 n. 11 (7th Cir.1993)). The Court is satisfied that the evidence shows that the twenty (20) Plaintiffs would be inconvenienced by having to travel to Missouri for a trial. This fact is almost a given since all Plaintiffs reside in Georgia. The Court notes, however, that the evidence submitted with regard to inconvenience by Plaintiffs is not particularly strong nor does it establish a substantial hardship on any particular Plaintiff. Each declaration submitted is virtually the same and the Court takes note of the inconsistencies pointed out by Defendants. For instance, Crosby declares that "[t]ransfer of this lawsuit from Georgia to Missouri would create a substantial hardship on me ... I would face the choice of either not being present for most of my own trial, or abandoning my current farming operation for an extended period of time to attend trial in Missouri." (Crosby Decl., ¶ 9). However, prior to said statement, Crosby declares that "I was a Georgia farmer engaged in the business of growing seasonal row crops..... Because of farming losses I sustained, I am now working at Cagle Foods in Mitchell County." (Crosby Decl. ¶ 3). Thus, it would appear that Crosby would not be inconvenienced based on his farming activities.[23]

## B. *Convenience of the Witnesses*

The convenience of witnesses is said to be a primary, if not, the most important factor in passing on a motion to transfer under § 1404(a). *See Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923 (W.D.Mo.1985). A court must focus primarily upon the availability and convenience of *key* witnesses. *See LeBouef v. Gulf Operators. Inc.*, 20 F.Supp.2d 1057,

1060 (S.D.Tex.1998) [emphasis in original]. The convenience of one witness may outweigh the convenience of numerous less important witnesses. *Id.*

Plaintiffs argue that they have in excess of 100 non-party witnesses located in Georgia within the subpoena power of the Court, who they presently intend to call as live witnesses. (James Paul Aff. ¶ ¶ 10, 11, Pls.' Ex. A). Additionally, Plaintiffs assert there are in excess of 300 additional non-party witnesses located in Georgia whom may be called as rebuttal witnesses. Plaintiffs contend it would be cost prohibitive and inefficient to present non-party witnesses' testimony by reading depositions or through videotaped deposition testimony. Defendants do not submit any affidavits or actual names of employees or people that they intend to call that will testify. Defendants simply assert that Defendant Monsanto's *key* witnesses are in Missouri and not in Georgia. Defendants submit that Plaintiffs will likely have fewer witnesses and only a handful of non-party fact witnesses, and some are fellow farmers.

Upon review of the record and the parties' arguments, the Court finds that the convenience of the witnesses factor, particularly with regard to the number of witnesses, weighs in favor of retaining venue in this district. Relying on the affidavit of their lead attorney, each Plaintiff identifies the witnesses he/she intends to call and specifies generally what the witnesses will possibly be called to testify about at trial. Defendants, on the other hand, do not identify the names or the number of *key* witnesses it expects to testify. Defendants simply assert that their key witnesses are in St. Louis, Missouri and not Georgia.

---

**23.** The Court notes that Plaintiffs agree that the convenience of the parties factor is neutral, but asserts that such is the case with regard to the Plaintiffs bound by the forum selection clause only. (Pls.' Brief Opp. To Mot. To Transf. at 16. Doc. No. 230). However, convenience of the parties must be looked at based on the record as a whole.

(Casale Decl., ¶ ¶ 3, 4). Delta Pine does not assert any evidence on its own on behalf of transfer. While the Court finds that Plaintiffs have shown the Court that they have more witnesses that will be inconvenienced than the Defendants, what is not clear, is which of the more than 100 witnesses are actually *key* witnesses. The Court further notes that some of the witnesses Plaintiffs intend to call are employees or representatives of Delta Pine or Monsanto and other Plaintiffs named in the lawsuit. (*See* James Paul Aff., ¶ ¶ 10). Those witnesses, which are certainly *key*, would already be in Missouri. Furthermore, although Plaintiffs state it would be inefficient to present testimony by deposition or videotape, the Court finds that although presentation of testimony by deposition or videotape may not be as lively or have as much impact on the jury, it is appropriate and often used in trials when found by the parties to actually be more efficient and cost effective. Lastly, a large number of Plaintiffs' witnesses identified as rebuttal witnesses are by their very designation, not key witnesses. Therefore, although the Court finds that the convenience of the witnesses factor weighs in favor of retention, the evidence is not particularly strong.

### C. *Presence of the Documents and Ease of Access to Sources of Proof*

██ Plaintiffs argue that substantial records and witnesses of Defendant Monsanto and Delta Pine related to other aspects of this case, including the development of the varieties of cotton, and the field testing or lack of field testing, are located outside of Missouri. Thus, Plaintiffs argue the inconvenience of documents should be given little weight, if any, since a number of the documents have been photocopied and produced in Georgia. Monsanto argues that relevant documents relating to the development of Roundup Ready and Bollgard technologies are locat-

ed in Missouri, not Georgia, at Monsanto's headquarters. Therefore, it would be inconvenient for Monsanto to be forced to produce these documents in Georgia. On the other hand, Defendants argue that Plaintiffs are in possession of very few relevant documents and have only produced a total of 1153 documents relevant to their farming operations and many testified that they are unaware of any more relevant documents.

Upon review of the record and the parties' arguments, the Court finds that the Defendants have shown that the presence of documents and ease of access to sources of proof is in Missouri and not Georgia. Plaintiffs argue that substantial records and witnesses of Defendant Monsanto and Delta Pine related to other aspects of this case, including the development of the varieties of cotton, and the field testing or lack of field testing, are located outside of Missouri, but do not show that most of the documents or sources of proof necessary to resolve the issues in this case are in Georgia. Conversely, Defendants show that although certain testing takes place outside of Missouri, the information is sent back to Monsanto in St. Louis, for incorporation into its database. (Defs.' Reply Brief In Supp. Mot. To Transfer at p. 9, Doc. No. 320; Croon Depo., pp. 28, 49, 58, 68, 69.). Therefore, the Court finds that the presence of documents and ease of access to sources of proof factor weighs in favor of transfer.

### D. *Interest of Justice*

██ Plaintiffs argue that it is in the interest of justice to deny transfer. Plaintiffs assert that as to the Plaintiffs that Defendants have not produced a written 1998 Agreement, Defendants motion should be denied and since all the Defendants will have to litigate in this Court they will already have to incur the expense

and inconvenience. Defendants argue that because Plaintiffs freely entered into the 1998 Agreement and consented to exclusive jurisdiction and the Missouri choice is reasonable, the forum selection clause should be enforced.

Upon review, the Court finds that it is in the interest of justice to transfer this entire case. There is no evidence that the contract at issue was not freely and fairly negotiated by experienced farmers and business professionals. Plaintiffs do not claim that the Defendants engaged in fraud, duress, misrepresentation or other misconduct in connection with the forum selection clause or the 1998 Agreement. Defendants have shown that their choice of Missouri as a forum is entirely reasonable: its headquarters are located there, most of the documents related to testing are in Missouri; and Defendants' key witnesses are there which Plaintiffs may need for trial. *See e.g., P & S Business Machines,* 331 F.3d at 808 (11th Cir.2003)(enforcing a valid forum selection clause and holding that the choice of a California venue was reasonable since Canon Computer Systems, Inc. was a California corporation and its headquarters and principal place of business were located in California); *but cf., Brock v. Baskin–Robbins USA Co.,* 113 F.Supp.2d 1078, 1090–1091 (E.D.Tex.,2000)(declining to enforce a forum selection clause and holding that "[w]hile a majority of the Plaintiffs have a valid forum-selection clause in their contracts, these contracts were not the result of equal bargaining power... [and] ... defendants have presented no evidence [that] the California forum is more convenient or less burdensome [where] defendants principal place of business has moved from California...").

The Court agrees that the fact that some Plaintiffs are not bound by the forum selection clause is a factor that must be given due consideration despite the presence of a valid-forum selection clause. When considering a motion to transfer, the federal courts accord a plaintiff's choice of forum considerable deference. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The Court's independent review of the factors justifying transfer ensures that the Plaintiffs' choice who are not contractually bound by the forum selection clause are not totally disregarded. In this case, however, the majority of the Plaintiffs' choice of forum was Missouri by virtue of signing the 1998 Agreement. Since the plaintiff is "the master of the complaint." *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 831, 122 S.Ct. 1889,1894, 153 L.Ed.2d 13 (2002), by virtue of choosing to bring this lawsuit together, the Plaintiffs without a contractual obligation to litigate this case in Missouri have in essence made a choice to subject themselves to suit in a venue other than their choice.[24] Moreover, John Harrel, the one Plaintiff the parties agree did not sign a 1998 Agreement, admits that he has since signed a Monsanto Technology Agreement. (Harrel Depo. p. 36). The 2001 Agreement signed by Harrel contains substantially the same forum selection clause at issue here. (Defs.' Mot. To Transfer, Ex. 19). The record shows that other cotton-

---

**24.** The Court notes that Plaintiffs did not move to sever the claims of those Plaintiffs not bound by the forum selection clause. *See* Fed.R.Civ.P. 21. In addition, a similar action was filed by some but not all of the Plaintiffs in the Superior Court of Fulton County, State of Georgia, on April 29, 2002. *See W. Hamill McNair. et. al. v. Monsanto Company, et. al.,* 1:02–cv–120 (WLS). After removal to the United States District Court for the Northern District of Georgia, the parties consented to transfer said action to this district for the purpose of consolidation with this case. This indicates that the Middle District of Georgia was not the Plaintiffs' preferred forum.

seed is available to the Plaintiffs. Furthermore, in this case, the other party, Defendant Delta Pine, does not challenge the convenience of the Missouri forum but joins in Defendants' Monsanto and Pharmacia's motion to transfer. The Court could conceive of a situation where the majority of the plaintiffs were not bound by a valid forum selection clause, and the 1404(a) factors showed the chosen forum of a few to be substantially inconvenient to the rest of the litigants, as a situation that would militate against the enforcement of the forum selection clause. That is not the case here. The presence of a valid forum-selection clause is given controlling weight in all but the most exceptional circumstances. *Stewart Org. Inc., et. al. v. Ricoh Corp., et. al.,* 487 U.S. 22, 33, 108 S.Ct. 2239, 2246, 101 L.Ed.2d 22 (1988). Based on the record, the Court finds that it is in the interest of justice to transfer the entire action, including the claims of those not contractually bound by the forum selection clause to the United States District Court for the Eastern District of Missouri. Section 1404(a) provides for transfer of *"any civil action"* and not individual claims. *See Technosteel, LLC v. Beers Const. Co.,* 271 F.3d 151, 157 (4th Cir.2001). Furthermore, Plaintiffs have not met their burden of showing that enforcement of the forum selection clause is sufficiently inconvenient to justify retention of this dispute or that transferring the claims of the Plaintiffs not bound by the forum selection, under the facts presented in this case, is an exceptional situation where judicial enforcement of the contractual choice of forum would be improper. Therefore, the Court concludes that the balance of the factors weigh in favor of transfer. Accordingly, Defendants' motions to transfer are **GRANTED**.

## CONCLUSION

In sum, the Court finds that Plaintiffs' motions to strike (Doc. Nos. 233, 238, 239, 241, 351, 352, and 353) should be, and hereby are, **DENIED**. Defendants' motions to transfer venue (Doc. Nos. 99, 105) should be, and hereby are, **GRANTED**. It is **ORDERED AND ADJUDGED** that pursuant to 28 U.S.C. § 1404(a) said case, and all orders and matters therein, be and are, transferred to the United States District Court for the Eastern District of Missouri.